493 So.2d 1379 (1986)
ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE COMPANY, a Corporation, and Bob Mullen
v.
David GRIFFIN and Susan Griffin.
84-452.
Supreme Court of Alabama.
January 17, 1986.
Rehearing Denied July 11, 1986.
Application for Rehearing Granted; Opinion Extended October 31, 1986.
*1380 David E. Allred for Hill, Hill, Carter, Franco, Cole & Black, Montgomery, for appellants.
*1381 Steven F. Schmitt for Hornsby & Schmitt, Tallassee, and Thomas O. Bear, Foley, for appellees.
PER CURIAM.
This is an appeal by Alabama Farm Bureau Mutual Casualty Insurance Company, Inc., and Bob Mullen, from a final judgment entered pursuant to a jury verdict in the amount of $276,368. David Griffin and Susan Griffin sued Farm Bureau and Mullen on theories of fraudulent misrepresentation and suppression of material facts.
The Griffins made application for insurance on a pickup truck and horse trailer on October 22, 1982, through Mullen, an agent for Farm Bureau. The Griffins testified that they were assured by Mullen that they had full coverage on the horse trailer, if it was attached to the scheduled pickup truck and the truck was driven by one of the plaintiffs. Approximately a month later, David Griffin's mother, Louise Griffin, contacted Mullen on behalf of the Griffins to ask if the Griffins had insurance coverage if they hauled cows, horses, or hay, or anything else for hire in the truck and trailer. Her testimony regarding this conversation was as follows: Mullen informed Mrs. Griffin that they would not have coverage unless they paid an additional premium. In response to the question "Well, does he [David] have full coverage now?" Mullen said that David did if he hauled his own property or if he hauled for others as an accommodation but not for hire. Mrs. Griffin then told Mullen that the Griffins hauled horses all over the State of Alabama and that these horses were David's and his father's and she wanted to know if David had full coverage on that truck and trailer. Mullen said, "Mrs. Griffin, David has all the coverage that he needs on that truck and trailer." Mrs. Griffin told David what Mullen had said.
On February 5, 1983, David, while driving his pickup truck with the horse trailer attached, was involved in a collision. On that same night, around 10:00 P.M., Louise Griffin called Mullen at his home to report the accident. Mullen informed Mrs. Griffin that David had no collision coverage on the trailer. Mrs. Griffin informed David of this, and about forty minutes later David called Mullen. Mullen informed David that the trailer had never been insured for collision coverage. David expressed his dissatisfaction with Mullen. Mullen replied that David should perhaps take his business elsewhere, and hung up.
The cost of repairing the trailer was $818. In December of 1983, the Griffins sold the trailer to David's father for $2,700, which was enough for the Griffins to purchase another trailer. There was a difference of $1,368 between what the Griffins had paid to purchase and repair the trailer and what they received from David's father.
After the jury rendered its verdict, Farm Bureau and Mullen filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial/remittitur. This was denied by the trial court.
Farm Bureau and Mullen present the following issues for review:
STATUTE OF LIMITATIONS:
"In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his action."
§ 6-2-3, Code 1975.[1]
This Court in Gonzales v. U-J Chevrolet Co., 451 So.2d 244 (Ala.1984), wrote:

*1382 "In interpreting this section, this Court has consistently held that facts constituting fraud are deemed discovered when they should have been discovered....
"Fraud is deemed to have been discovered when the person either actually discovered, or when the person ought to or should have discovered, facts which would provoke inquiry by a person of ordinary prudence, and, by simple investigation of the facts, the fraud would have been discovered...."
451 So.2d at 246-47.
On October 22, 1982, plaintiffs met with Mullen, paid six months' premium and received a receipt, on which was written "farm truck." On February 5, 1983, the horse trailer, which was being pulled by the farm truck, was sideswiped and damaged in the collision mentioned above. This case was filed on February 1, 1984. There was evidence that no insurance policy was received by the plaintiffs until April 1983, when the six-month renewal premium notice was received.
The facts constituting the alleged fraud were not clear on the face of the receipt so as to come under the principles of the Gonzales case. Coverage on the horse trailer was contingent upon its being attached to the "farm truck." The fact that the receipt showed only "farm truck" was not sufficient for us to hold that the plaintiffs, as a matter of law, were on notice that there was no physical damage coverage on the horse trailer while it was attached to the farm truck. The trial court charged the jury in regard to the statute of limitations defense. The charge was not objected to by the defendants, and the correctness of this charge has not been raised as an issue. In this case, the statute of limitations issue was a factual question for the jury.

RELIANCE:
We cannot agree with Farm Bureau that as a matter of law plaintiffs' reliance upon Mullen's statement was not reasonable under the circumstances. Farm Bureau cites Torres v. State Farm Fire & Casualty Co., 438 So.2d 757 (Ala.1983), in support of its position. In that case, Mrs. Torres alleged that she told State Farm's employee "The first thing I want to tell you is that we want flood coverage," to which the employee allegedly replied: "I'll take care of it." The Torreses received an insurance policy each year which provided no flood coverage. In affirming summary judgment in favor of State Farm, this Court wrote:
"Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover...."
438 So.2d at 758-59.
Plaintiffs' evidence indicated that Mullen told the plaintiffs that they had physical damage insurance on the horse trailer but only when it was being pulled by the "farm truck" and the "farm truck" was being driven by one of the plaintiffs. Their evidence further showed that at their request, Louise Griffin later called Mullen and was told that horses owned by others would not be covered when transported in the trailer for hire, but would be if they were transported gratuitously. This Court has examined *1383 the insurance policy. To determine whether the horse trailer would have been covered, it is necessary to consider the definition of "Automobile," which is found on page seven of the policy. That definition provides:

"Automobilemeans the private passenger automobile ... and under Coverage A, B, C, C-1 and C-2 a trailer owned by the named insured when attached to an insured automobile.
"Under Coverages D, D-1, D-2 and E, `Automobile' also means any equipment permanently attached thereto and when application is made and additional premium paid therefor, power operating machinery, camper or similar type constructed bodies and sound receiving and transmitting equipment."
The plaintiffs' evidence indicates they discussed with Mullen the coverage which they wanted, including full coverage on the horse trailer, before he gave them the amount of the premium. The jury could have found that the plaintiffs had the right to rely on his representations. Even if they had obtained a copy of their policy and read it, the question of whether they acted as reasonably prudent people who exercised ordinary care in relying on Mullen's representations would have been a question for the jury. The jury determined that they did.

JUROR MISCONDUCT:
This Court is not persuaded that there was juror misconduct during voir dire. Farm Bureau contends that one juror failed to respond to these two questions:
"COURT: Is there any member of the jury who has ever had a claim with a casualty insurance company which was denied in whole or in part?
"...
"COURT: Is there any member of the jury who has ever been involved in a dispute with an insurance company concerning the payment of a claim?"
There was no response to either of these questions. One member of the venire, who served on this jury, had been part of a group which bought a health and accident policy which was represented to the group as paying "for anything you go to the hospital for." One member of the group, not the juror, found that the policy did not pay for all hospitalizations. The group cancelled the policy. Clearly, this juror did not have a claim which was denied and was not involved in a dispute concerning a claim of that juror's. Under the circumstances, the failure of the juror to answer either of the questions in the affirmative was not juror misconduct.

ABSENCE OF PROOF OF PRESENT INTENT NOT TO PERFORM:
The jury could have found that on October 22, 1982, Mullen represented to the plaintiffs that the horse trailer was "fully covered" from that date forward so long as it was attached to the "farm truck." This representation by Mullen constitutes a statement of an existing fact, i.e., that there was at that time coverage on the trailer. At no time from October 22, 1982, until the date of the accident did Farm Bureau intend to provide physical damage coverage on the trailer. The cases cited by Farm Bureau in support of this issue are distinguishable from the facts in this case.

PUNITIVE DAMAGES:
Farm Bureau objected to the trial court's oral charge on punitive damages prior to the jury's retiring for deliberations. Farm Bureau filed a motion for JNOV on this issue.
The rule as to the measure of damages in fraud cases is as follows:

*1384 "The general measure of recovery for fraud includes all damages within the contemplation of the parties or which are the necessary or natural and proximate consequences of the wrong...."
Winn-Dixie Montgomery, Inc. v. Henderson, 371 So.2d 899 at 902 (Ala.1979).
A finding of legal fraud or constructive fraud, however, is not sufficient to support an award of exemplary or punitive damages. Punitive damages may be awarded only if the evidence establishes an intent to deceive or defraud. Tallant v. Grain Mart, Inc., 432 So.2d 1251 (Ala. 1983). Once an intent to deceive has been established, it is difficult to understand that the fraud was not committed grossly. Shiloh Construction Co. v. Mercury Construction Corp., 392 So.2d 809 (Ala.1980). In Ex parte Smith, 412 So.2d 1222 (Ala. 1982), this Court held, at 1224-25: "[I]f the representation is shown to have been made knowing it is false, then the law permits punitive damages by way of punishment. Without knowledge of its falseness, the law allows only compensatory damages..., unless the misrepresentation is made so recklessly and heedlessly as to amount to the same thing as knowledge of its falseness."
There was direct evidence from the plaintiffs that Mullen told the plaintiffs on October 22, 1982 that they were getting full coverage on their horse trailer. There was evidence that Mullen restated this to Louise Griffin, the mother of one of the plaintiffs, with knowledge that this information was being requested by the plaintiffs and that it would be relayed to them. At trial, Mullen testified that he represented only that the horse trailer was covered by liability insurance and not that it was fully covered. A thorough review of the record shows that plaintiffs raised Appaloosa horses and that after this insurance was obtained on October 22, 1982, they started taking these horses to horse shows in this trailer.
It is the function of the jury to determine the credibility of the evidence introduced.
This Court cannot hold that the award of punitive damages was not logically reasonable, considering all of the direct and circumstantial evidence and the inferences which may be reasonably drawn therefrom.

EXCESSIVENESS:
This Court has not established specific standards for trial courts to apply in granting or denying new trial motions on the grounds of excessiveness. General Motors Corp. v. Edwards, 482 So.2d 1176 (Ala.1985). We presume that a trial court's ruling on the issue of damages is correct and we will not disturb such a ruling unless we find it to be a plain and palpable error. Vest v. Gay, 275 Ala. 286, 154 So.2d 297 (1963). We do not find such in this case.
AFFIRMED.
FAULKNER, ALMON, SHORES and BEATTY, JJ., concur.
TORBERT, C.J., and ADAMS and HOUSTON, JJ., concur in part and dissent in part.
MADDOX and JONES, JJ., recused.

On Application for Rehearing
PER CURIAM.
The Court's rehearing opinion of July 11, 1986, is hereby withdrawn and the following is substituted therefor:
The application is hereby granted. Farm Bureau earnestly argues that the trial court was palpably erroneous in refusing to grant it a new trial outright or conditioned on the appellees' failing to remit a portion of the verdict. It insists that the verdict of the *1385 jury is the result of bias, passion, corruption, or other improper motive, and is for that reason excessive. The trial court did not set out the factors it considered in denying Farm Bureau's motion for new trial or remittitur on this ground. Therefore, we are incapable of saying the court erred in this regard. In Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), the Court has held that it is necessary, in order for it to review the action of trial courts in either granting or refusing motions of this kind, that the trial court enter an order stating its reasons for doing so. Whether trial court interference with a jury verdict is justified will necessarily depend upon the facts developed in each case, but the trial court may interfere only where the verdict loses its constitutional protection for one or more of the reasons set out in Hammond.
Accordingly, this cause is remanded for the entry of an order consistent with the decision in Hammond v. City of Gadsden. The trial court in its discretion may order a further hearing to reconsider the claim that the verdict is excessive. In any event, it is to state its reasons for any action it takes on this issue for the record and report its findings and conclusions to this Court within 28 days of the date of the release of this opinion.
APPLICATION FOR REHEARING GRANTED; OPINION EXTENDED.
All the Justices concur, except Maddox and Jones, JJ., recused.
HOUSTON, Justice (concurring):
I withdraw my special opinion issued with the Court's original opinion of January 17, 1986. In doing so I point out that I concur with all parts of the Court's main opinion of January 17, 1986, except that part discussing "excessiveness."
TORBERT, C.J., and ADAMS, J., concur.
NOTES
[1] Section 6-2-3 was amended, effective January 9, 1985, to substitute "two years" for the phrase "one year." That amendment is not a factor in this case.