507 So.2d 1295 (1986)
ALABAMA POWER COMPANY
v.
Brenda Louise CANTRELL.
84-1146.
Supreme Court of Alabama.
September 5, 1986.
On Application for Rehearing and On Return After Remand May 22, 1987.
*1296 John P. Scott, Jr., of Balch & Bingham, Birmingham, and Billy L. Church of Church, Trussell & Robinson, Pell City, for appellant.
John W. Haley of Hare, Wynn, Newell & Newton, Birmingham, for appellee.
MADDOX, Justice.
This is a wrongful death case. The plaintiff's husband was killed while attempting to take down a 30-foot television antenna. Decedent and his brother had pulled the antenna loose from the bracket that attached it to the house and were attempting to lower it to the ground. The brother, who was on the roof, let go of the antenna for an unknown reason while the decedent was still holding the base of it. His turning loose caused the antenna to move. The antenna contacted Alabama Power Company's 7,200-volt power line. Decedent was killed almost instantly. Plaintiff claims the line was uninsulated and that the failure of the Power Company to have the line insulated was the proximate cause of decedent's death.
The line was approximately 25 feet above the ground and about 9 feet away from the building where the antenna was attached. The jury returned a verdict in favor of plaintiff for $1 million.
Alabama Power Company (hereinafter "APCo") raises five issues on appeal. First, that the trial court erred by not granting a directed verdict or a judgment notwithstanding the verdict due to APCo's lack of notice of the condition; second, that the trial court erred by not instructing the jury on the issue of notice; third, that the trial court erred in admitting testimony of the defendant's expert that "invaded the province of the jury"; fourth, that the trial court erred by allowing questions to be asked in front of the jury about certain reports compiled by the government relating to the danger of television antennas and power linesAPCo's motion in limine to exclude these reports was denied; and fifth, APCo claims the jury's $1 million verdict for the plaintiff was excessive.

I
First, appellant argues that it had no notice of the situation. Our rule on duty to insulate is well established and was recently *1297 restated in the case of Alabama Power Co. v. Brooks, 479 So.2d 1169, 1172 (Ala. 1985), from which we quote extensively because the facts of that case are similar to those of the instant case:
"APCo first contends that the trial court committed reversible error by not granting its motion for a directed verdict and later refusing its motion for a judgment notwithstanding the verdict. It argues that it had no duty to insulate its lines in the shop area or to take any precautionary measures with respect thereto because it had no notice, actual or constructive, of any activity on, around, or under the subject lines, which would have indicated that persons might come into contact with them. We disagree. In Bush v. Alabama Power Co., 457 So.2d 350, 353 (Ala.1984), the Court restated the duty of a power company with regard to the use and location of uninsulated electrical lines: `The duty of an electric company, in conveying a current of high potential, to exercise commensurate care under the circumstances, requires it to insulate its wires, and to use reasonable care to keep the same insulated wherever it may reasonably be anticipated that persons, pursuing business or pleasure, may come in contact therewith. This statement of the rule implies that, in the absence of statute or municipal ordinance, it is not necessary to insulate wires which are so placed that no one could reasonably be expected to come in proximity to them.' Foster v. Alabama Power Company, 395 So.2d 27, 30 (Ala.1981), citing Curtis on the Law of Electricity, § 510. In other words, Alabama Power must either insulate its electrical lines, or locate them in a position where they pose no danger to human life. However, the duty to insulate does not arise absent notice, actual or constructive, that persons may come into contact with the uninsulated wires. Alabama Power Co. v. Alexander, 370 So.2d 252 (Ala.1979)."
The Brooks case involved a drilling rig boom that had been raised into a 7,200-volt electric power line. In the instant case, APCo argues that it had not received notice, either actual or constructive, that persons pursuing business or pleasure might come into contact with the power line.
We cannot agree that APCo had no notice that persons might come into contact with the wire. While no allegation is made and no proof is offered that APCo knew the antenna was to be taken down on this particular day, that is not the only requirement of our rule for notice. The Power Company is under a duty to insulate its wires wherever it may reasonably be anticipated that persons, pursuing business or pleasure, may come in contact therewith. "Where the facts, upon which the existence of a duty depends, are disputed, the factual dispute is for resolution by the jury." Alabama Power Co. v. Alexander, 370 So.2d 252, 254 (Ala.1979). Furthermore, it is also the law that a motion for a directed verdict or for judgment notwithstanding the verdict will not be granted and the case will go to the jury "if the evidence or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark, the least particle, the smallest trace, or a scintilla in support of the theory of the complaint." Alabama Power Co. v. Taylor, 293 Ala. 484, 492, 306 So.2d 236, 243 (1975). We hold that there was sufficient evidence in the instant case to provide this scintilla. The facts, upon which the existence of a duty to insulate depended, were disputed; therefore, the factual dispute was one for the jury to resolve. Some of these facts are: an aluminum antenna, set up on an apartment building and near an uninsulated power line might be reasonably foreseeable as an object which could be energized if it touched the power line; this apartment was on the main street of Springville, Alabama, and both the power line and the antenna could be clearly viewed from the street; there are two electric meters, owned by APCo, on the side of the building a few feet from where the antenna was located, and the jury could have found that to examine the meters it would be necessary for anyone walking from the street to pass by the antenna; testimony was given that APCo meter readers had been seen in the neighborhood; and that the antenna *1298 had been in place about two years. These facts were enough to create the scintilla of evidence required by our law to create a jury question and the trial judge properly denied the motion for a directed verdict, and the JNOV.

II
Second, APCo claims that the trial court erred in failing to instruct the jury on the issue of "notice." The trial judge refused to give defendant's requested charge number 19 to the jury, which read:
"I charge you that Alabama Power Company had no duty to insulate its wires unless you are reasonably satisfied from the evidence that the company had actual or constructive notice that the removal of an antenna was in progress in proximity to its power lines. Any notice furnished to an Alabama Power Company employee would not be notice to the Company unless it is with respect to the very matter which the agent is employed to transact for the Company and unless it comes to him while he is so engaged."
A charge almost identical to this was held not to be a proper statement of the law in the Brooks case. There, this Court held that such a charge was properly refused because it would require APCo to have notice of the specific activity engaged in to establish a duty to insulate. The activity that places APCo on notice that persons may come into contact with its lines does not have to be the same activity involved in the injury-producing accident. Brooks, at 1175, citing Alabama Power Co. v. Smith, 273 Ala. 509, 142 So.2d 228 (1962).
In its brief, APCo argues that it has been well established in Alabama that each party is entitled to have proper instructions given by the trial court regarding all issues presented, and that the failure of the court to give a correct charge as to any theory of the case is reversible error, citing Liberty National Life Ins. Co. v. Smith, 356 So.2d 646 (Ala.1978); Jones v. Blackman, 284 Ala. 684, 228 So.2d 1 (1969); Health Maintenance Group of B'ham v. Rutledge, 459 So.2d 889 (Ala.Civ.App.1984); Great Northern Land & Cattle, Inc. v. Firestone, 337 So.2d 1323 (Ala.1976). APCo claims that this obligation of the trial court has particular application to this case, "where the court failed and refused to charge the jury on the requirement of `notice' to APCo," because, APCo says, "the `notice' requirement was an essential element in [plaintiff's] case and one on which the jury received absolutely no instruction." APCo claims that it alerted the trial court to this requirement in argument in support of its motion for directed verdict as well as through its requested charge no. 19, quoted above.
APCo concludes, in its brief:
"While the trial court refused Requested Charge No. 19, it made no attempt to charge on `notice' in its oral charge. In fact, the trial court, in its oral charge, simply charged on the elements of general negligence in an abbreviated fashion. The only charges given on the duty of an electric utility with regard to the installation and maintenance of uninsulated power lines were those given upon request. Even with these limited charges, the trial court still failed and refused to give any charge to the jury on the specific requirement of `notice' and the requirements of `notice' to an agent of APCo."
We do not read this Court's previous decisions as requiring notice as the only possible ground on which the duty to insulate arises. In Alabama Power Co. v. Alexander, 370 So.2d 252, 254 (Ala.1979), this Court opined:
"In this case, there is no evidence that Alabama Power Company had either actual or constructive notice that well drilling was in progress at a site near their power lines. Absent this notice, the Power Company had no duty to insulate the wires or take other precautionary measures unless under the totality of circumstances, the Power Company should have reasonably anticipated that persons, pursuing business or pleasure, might come in contact with the power lines." (Emphasis added.)
Two different standards are clearly established. Even in the absence of actual notice to APCo, if the evidence, under a *1299 totality of the circumstances, showed that APCo should have reasonably anticipated that persons, pursuing business or pleasure, might come in contact with the power lines, the duty to insulate arose. The trial judge gave an instruction on this "reasonably anticipated" standard, which correctly stated the law; therefore, the trial judge did not commit prejudicial error by failing to charge the jury on the notice issue.

III
Third, APCo argues that the trial court erred by allowing testimony which APCo urges "invaded the province of the jury." We do not agree. Expert witnesses are allowed to give their opinions "on any question of science, skill, trade or like questions" based on the facts as proved by other witnesses. Code 1975, § 12-21-160. In this case, both sides called expert witnesses. The testimony objected to is as follows:
"Q. If you assume that a thirty foot t.v. antenna was located on the corner of the apartment on the left, and was located within approximately nine feet nine inches away from a 7,200-volt uninsulated electric line, do you have an opinion whether or not the maintenance of that line in its uninsulated condition was in keeping with good electrical practice from the standpoint of safety?
"A. Yes, I have an opinion.
"Q. What is that opinion?
"MR. SCOTT: I object to his opinion based on the ground the question does not lay a proper predicate for his opinion and assumes facts not in evidence.
"THE COURT: Overruled.
"Q. What is your opinion?
"MR. SCOTT: Same objection.
"THE COURT: Overruled.
"A. In my opinion, it was not good practice to maintain the two items in that relationship to each other unless there was insulation between them.
"Q. Tell the ladies and gentlemen of the jury why it was not a safe practice to maintain an uninsulated power line within ten feet of a thirty foot antenna.
"MR. CHURCH: May it please the Court, I object to that question.
"THE COURT: Overruled.
"MR. CHURCH: Your Honor ...
"MR. HALEY: I withdraw the question.
"Q. Explain to the ladies and gentlemen of the jury the basis for your opinion that it would be unsafe.
"MR. CHURCH: Your Honor, I object to that question. I think it invades the province of the jury letting this witness explain to the jury what is safe and unsafe.

"THE COURT: Overruled.
"MR. CHURCH: We except.
"A. The problem with a t.v. antenna in proximity to a power line ... anytime that t.v. antenna can essentially fall over. If you let it fall over, it can get into the power line, and you have the potential for the antenna to become energized, reaching the same 7,200-volt potential as a power line. This can happen under any number of circumstances. Number one, t.v. antennas, especially on pieces of property such as this that is rented, are put up and taken down with some regularity as people move.
"MR. SCOTT: Judge, I object and move to exclude. That is speculation on the part of this witness. He is getting into the realm now of telling us everything about the entire community when he is an expert out of Birmingham.
"THE COURT: Overruled.
"A. In the process of putting up and taking down such an antenna, there is always the potential for the antenna contacting the power line and becoming energized and an individual being injured. Second, the problem exists from the standpoint if the antenna is blown over because of a high wind, it can contact the power line and the lead-in-wire into the house can become energized.
"MR. SCOTT: I object and move to strike that. That has nothing to do with this case. It is mere speculation. There is no evidence of wind affecting *1300 this accident whatsoever. I move to exclude it.
"THE COURT: Overruled.
"A. Because of these potential problems that exist between the wire and the antenna, they should either not be in that proximity to each other, or there should be insulation on the wire to prevent the antenna from becoming energized in the event it contacts the wire."
We agree with the statement found at § 128.05 of McElroy's Alabama Evidence:
"Expert opinion that a place or appliance is safe or unsafe, or the like, is admissible if, but only if, the jury upon a presentation to them of all facts practicable to be presented, is not as capable at forming a sound opinion as is the expert."
C. Gamble, McElroy's Alabama Evidence § 128.05 (3d ed. 1977). Both parties in this case asked their expert witnesses questions regarding "safe" utility practices. The above questions might be properly excluded if they asked whether a specified condition was "negligent" within the legal meaning of that term. This rule is stated in McElroy's at § 128.07. The expert here was properly allowed to testify as to what he based his opinion on and what his expert opinion was as to the design and operation of the electrical system. This was not a matter of common knowledge, and the trial judge properly allowed the expert testimony. See generally, Maslankowski v. Beam, 288 Ala. 254, 259 So.2d 804 (1972). The trial judge properly allowed the expert to state his opinion as to the maintenance and operation of an electrical system. The expert did not invade the province of the jury, because the matter was not one in the jury's knowledge or experience.

IV
Fourth, APCo argues that the trial court erred by failing to grant its motion in limine to exclude certain government reports on accidents involving television and CB radio antennas. In the first place, all of APCo's objections were sustained and the information was kept out of evidence. But appellant argues that just hearing the questions asked was prejudicial to it. Second, the Brooks case dealt with an issue almost identical to this, and we held that, for the limited purpose of showing the existence of national, industry-wide evidence of a serious problem that had resulted from the fact that certain types of equipment were coming into contact with uninsulated power lines, this type of questioning was proper. It is also relevant as to the degree of care exercised by APCo in the inspection and maintenance of its lines. Brooks, at 1177. Plaintiff's offer of proof at trial was for precisely this purpose:
"MR. HALEY: For the record, I would state that we offer Plaintiff's Exhibits No. 9, 10, 11 and 12 for the purpose of establishing that it was recognized within the industry that the erection and removal of t.v. and C.B. antennas created a hazard, when done in close proximity of high power electric lines."
Under this Court's holding in Brooks, we might well conclude that this material would have been admissible, were we called upon to decide that issue. We do not decide the admissibility of the information offered in this case. Because all of APCo's objections were upheld, and this Court has held that similar information might be allowable for a limited purpose, APCo suffered no prejudice, and the judgment of the court is not due to be reversed on this ground.

V
Fifth, and finally, APCo claims the $1 million damage award was excessive. APCo requested that the trial court order a remittitur. Here, APCo argues as follows:
"The imposition of punishment to APCo in the sum of $1,000,000 by the jury was clearly unwarranted under the facts and the law in this case. First, as previously emphasized, Cantrell's case was based upon a claim of simple negligence against APCo in the installation and maintenance of its power lines. Moreover, Cantrell was unable to present any evidence of `notice' to or knowledge of APCo to raise any significant proof of culpability or informed wrongdoing.

*1301 Nevertheless, this jury, following less than 2 days of testimony and without evidence of the violation of any specific safety rule, awarded Cantrell the exact amount demanded in the complaint. This record conclusively shows that the jury's verdict had to have resulted from prejudice and passion or other improper motive to support a million dollar verdict.
"This Court has concluded that in a wrongful death action in Alabama `the amount of the verdict and the severity of the punishment are graded according to the degree of culpability....' Airheart v. Green, 267 Ala. 689, 693, 104 So.2d 687 (1958)."
We do not at this time decide this issue, but we remand the cause with directions to the trial court to review its judgment in accordance with guidelines set out in our recent decisions in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); Harmon v. Motors Insurance Corp., 493 So.2d 1370 (Ala.1986); and Alabama Farm Bureau Mutual Cas. Ins. Co. v. Griffin, 493 So.2d 1379 (Ala.1986).
AFFIRMED, IN PART; REMANDED, WITH DIRECTIONS.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ., concur.

ON APPLICATION FOR REHEARING AND ON RETURN AFTER REMAND
PER CURIAM.
On original deliverance, this Court affirmed the judgment of the trial court in part, but remanded the cause to the trial court with directions for that court to review its judgment in accordance with guidelines set out in our decisions in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), and Alabama Farm Bureau Mutual Cas. Ins. Co. v. Griffin, 493 So.2d 1379 (Ala.1986), and to determine whether, in its opinion, the judgment in the amount of $1 million should be reduced.
APCo timely filed an application for rehearing, in which it claimed (1) that this Court misconstrued the facts of the case; (2) that this Court established a new legal standard in cases in which liability is sought to be imposed on APCo because an object, such as the TV antenna in this case, contacts one of its uninsulated lines; (3) that no liability should exist on APCo when the proof shows that it had complied with industry standards applicable to the duty an electrical company owes to those who might reasonably be expected to come into contact with one of its uninsulated wires; (4) that the opinion, as written, makes APCo an insurer and imposes strict liability in electrical contact cases; (5) that the 10% affirmance penalty under Code 1975, § 12-22-72 violates the Fourteenth Amendment to the Constitution of the United States; and (6) that the punitive damages verdict of $1 million violates the Eighth and Fourteenth Amendments to the Constitution of the United States.

I
We first consider APCo's argument that the undisputed facts show that it had no actual or constructive notice that persons might be expected to come into contact with its uninsulated line.
We have carefully reviewed the facts of the case, and the law as set out in the original opinion, and we are of the opinion that the evidence in this case was sufficient for the jury to find, based on a totality of the circumstances, that APCo knew or should have known that persons, pursuing business or pleasure, might come in contact with the power line.
In his order on remand, the trial judge has set out some of the evidence upon which the jury could have relied in finding liability in this case. We set out the full text of that order later in this opinion.
Because we are of the opinion that the original opinion adequately sets forth the facts of the case and correctly states the law applicable to those facts, we are of the opinion that the application for rehearing on the question of liability is due to be overruled.

II
On original deliverance, we did not decide whether the punitive damages award of $1 *1302 million was excessive, but we remanded the cause "with directions to the trial court to review its judgment in accordance with guidelines set out in our recent decisions in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); Harmon v. Motors Insurance Corp., 493 So.2d 1370 (Ala.1986); and Alabama Farm Bureau Mutual Cas. Ins. Co. v. Griffin, 493 So.2d 1379 (Ala.1986)."
On remand, the trial court conducted a hearing and entered the following order:
"ORDER
"[This] action was remanded with direction by the Supreme Court in the opinion filed September 8, 1986 for review by the Trial Court in accordance with guidelines set out in recent decisions.
"... [T]he Trial Court submits the following review in accordance with said remand with directions:
"This case was tried before the undersigned Judge with a jury. At the close of all the testimony, the Defendant made a Motion for a Directed Verdict contending that Plaintiff had not proved any negligence on the part of the Defendant. The Court heard extensive arguments on the Motion and was of the opinion that it was due to be overruled and entered an Order overruling said motion. The case was submitted to the Jury, and the Jury found in favor of the Plaintiff and against the Defendant, and assessed Plaintiff's damages at $1,000,000.00.
"The Defendant filed a Motion for a New Trial, again contending that there was no evidence to support a submission of the case to the Jury, and also contending that the amount of damages awarded was excessive. This Motion was set down for an oral hearing and was fully argued by both sides. This Court overruled the Motion for a New Trial, and also overruled the Motion for a Remittitur of Damages.
"The Defendant appealed the action to the Supreme Court and the opinion of the Supreme Court was filed on September 5, 1986. The Court affirmed the case as to liability and remanded to this Court for a review of its judgment with directions with reference to damages.
"Subsequent to September 5, 1986, the Defendant filed a Petition for Rehearing in the Supreme Court, which, according to the Court's understanding, is now pending.
"After the case was remanded to this Court, the Defendant filed a Petition for New Trial or Remittitur on Remand. In that petition, the Defendant has asserted a constitutional issue, which was not raised on the trial of the case and was not raised at any time while the case was pending in this Court. The Plaintiff filed a Motion to Strike the Petition insofar as it asks for a new trial on the question of liability. Since the issue of liability has been decided by the Supreme Court and that matter is now pending on a Petition for Rehearing, this Court is of the opinion that it does not have jurisdiction on that issue and has granted the Plaintiff's Motion to Strike that part of the Petition.
"The Court now will review the issue of damages in accordance with the mandate of the Supreme Court.
"The only damages that could be awarded in this case are what are designated as punitive damages. Punitive damages are awarded for two purposes, namely: (1) to punish a Defendant for a wrong done and (2) to deter this Defendant and others similarly situated, from committing like or similar wrongs in the future, and thus preserving human life. This Court further recognizes that the amount of damages in a death case are to be in accordance with the enormity of the wrong and the jury should take into consideration the necessity of preventing similar wrongs in the future.
"This Court finds that the jury which decided this case was not irresponsible, biased or prejudiced. The Court finds that the Jury's verdict was not based on anything other than a conscientious desire on the part of the Jury to render a just verdict in keeping with the Court's charge as to matters that they should consider in awarding damages. The Defendant does not contend that there was any improper conduct on the part of the *1303 Plaintiff's attorneys. The Court did fully charge the jury on the question of damages in accordance with the decisions of the Supreme Court. The Court, therefore, finds that the case was tried before a fair and impartial jury. The Court further finds that there was no indication, either during or after the trial, to even suggest that the jury acted improperly or that the verdict was based on prejudice, sympathy or favoritism. To the contrary, the Court finds that the twelve people who decided this case were good and reliable citizens, who discharged their duty in a conscientious manner.
"The Court will now review some of the testimony which the Jury heard and which it no doubt considered in arriving at its verdict.
"The T.V. antenna had been in close proximity to an uninsulated power line transmitting 7,200 volts of electricity for at least two years. There was sufficient evidence for the Jury to have found that the Defendant had actual knowledge of the existence of this condition, and if they did not have actual knowledge, they certainly had constructive notice. A person driving down Main Street in Springville, Alabama, could have seen the condition from the street. There was evidence that the Defendant had an ongoing inspection program in effect during the two-year period while this condition existed, and any type of an inspection would have disclosed this dangerous condition. There further was evidence from a supervisory employee of the Defendant and from a disinterested witness that meter readers regularly read the meter, which was in very close proximity to the antenna. The dangerous instrumentality, and that T.V. antennas in close proximity to high power transmission lines create a real danger. [sic] There was also testimony that a person standing at ground level could not tell whether the power line was insulated or not. The Defendant knew that this power line was not insulated.
"The Alabama Power Company is presumed to know the law that says certain power lines must be insulated. An official of the Alabama Power Company admitted that if this line had been insulated, the accident probably would not have occurred.
"There was evidence from which the Jury could have found that even though the Defendant knew of this dangerous condition, it would not have insulated the wire so long as it met the minimum clearance requirements of the Electrical Code. The Jury could have also found that the minimum clearance requirements of the Code were insufficient to render the situation that existed at the time of the accident reasonably safe. The Defendant now argues that it had no notice that this dangerous condition existed at the place of the accident. This contention was not made in the course of the trial. The only contention concerning notice that was made in the trial of the case was that they had no notice of the fact that the antenna was going to be taken down.
"This Court does not decide the question as to whether or not the jury did, in fact, believe all of the contentions above set forth, but they certainly could have believed it. If they did believe what they heard, they could have found that the Defendant had actual notice of the existence of the T.V. antenna; that the location of said antenna was in close proximity to a 7,200 volt power [line]; that the location of the T.V. antenna and power line created an extremely dangerous condition; that the Defendant knew that it was likely that the T.V. antenna would come in contact with the power line and the power line was likely to cause the death of innocent persons. The Jury could have further found from the evidence that the Power Company would not insulate its power line even though it knew it created a life-threatening condition so long as it met the minimum clearance standards of the National Electrical Safety Code.
"I am of the opinion that a $1,000,000.00 verdict is not excessive in view of the facts of this case.
*1304 "This was my reason for originally overruling the Defendant's Motion for a Remittitur. After having considered the matter again, I am still of the opinion that $1,000,000.00 is not excessive. The condition that existed at the time of this accident should not be allowed to exist. A small verdict would not, in my opinion, cause this Defendant to change its practices with reference to taking appropriate steps to correct such conditions. Hopefully, a verdict of $1,000,000.00 will cause this Defendant and other power companies to comply with the law and thus save lives.
"It is therefore ORDERED, ADJUDGED AND DECREED that the Motion for Remittitur or for a New Trial on the question of damages is overruled.
"This the 6th day of November, 1986.
 "/s/ Carl D. NeSmith
 "Circuit Judge
 "30th Judicial Circuit"
The parties have filed briefs in support of their respective positions regarding the order of the trial judge, and we now proceed to consider their arguments and address the legal issues involved.

III
On the damages issue, APCo argues that it is entitled to a new trial, or at least a remittitur, based on two grounds: (1) The trial court's statement of facts and conclusions in the order entered on remand are not supported by the record; (2) The punitive damages award of $1 million violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the Excessive Fines Clause of the Eighth Amendment.[1]
Counsel for APCo, in its brief on the damages issue, once again asserts that this Court and the trial court have misconstrued the evidence in this case. The trial judge, in his order on remand, in addressing the central argument made by APCo that it had no notice, actual or constructive, that someone would be injured or killed if it did not insulate its line, not only found that there was sufficient evidence to support such a finding, but further noted:
"The Defendant now argues it had no notice that this dangerous condition existed at the place of the accident. This contention was not made in the course of the trial. The only contention concerning notice that was made in the trial of the case was that they had no notice of the fact that the antenna was going to be taken down."
APCo's argument on ground (2) of the damages issue, that the punitive damages award violates federal constitutional guarantees, is succinctly stated in the concluding paragraphs of its brief:
"[T]his Court has several viable alternatives to remedy the severe and excessive $1 million punishment imposed upon APCo for its alleged simple negligence. This Court should be compelled to examine the lack of realistic standards in Alabama to guide a jury in assessing punitive damages for wrongful death and the disparity in punishment for civil defendants versus criminal defendants in cases of negligent homicide. This disparity warrants a finding that Alabama's wrongful death statute, in its exclusive punitive damage[s] remedy, is archaic, unjust, and unconstitutional.
"Alternatively, this Court must be compelled, at the very least, to order a new trial or a remittitur based upon the absence of evidence of such culpability and wrongdoing [as would] support the $1 million punishment imposed by this jury. As the overseer Court, it must remedy the injustice imposed on a defendant by a jury that had to have been motivated improperly to conclude that a $1 million punishment was appropriate under the true facts in this case. Accordingly, this Court must reverse the trial court's decision and order a new trial or a substantial remittitur so [as] to *1305 have the jury's verdict truly reflect the evidence actually proven in this action."
Cantrell, on the other hand, argues that we should not entertain the federal constitutional claims because they were not raised in the trial court either before or during the trial of the case; were not raised in the trial court when APCo filed, argued, and briefed its motion for a new trial or for a remittitur; and were not argued, or briefed, to this Court on original submission; but, on the other hand, were raised for the first time in APCo's brief in support of its application for rehearing before this Court. Cantrell argues that an identical factual setting was before this Court in Merrell v. Alabama Power Co., 382 So.2d 494, 497 (Ala.1980), and that this Court disposed of the application for rehearing there by writing:
"In brief in support of her application for rehearing the appellant says:
"`Merrell now for the first time contends in her application for rehearing that the Alabama wrongful death statute is unconstitutional for being in violation of the guarantee to the citizens of each state of the United States in the 14th Amendment to the constitution of the United States of America which provides in substance that no state shall deprive any person of property without due process of law nor deny any person within its jurisdiction the equal protection of the laws.'
"The appellant candidly admits that she did not attack the constitutionality of the wrongful death statute in the trial court nor in this Court on original submission, and acknowledges that as a general rule, this Court will not decide the constitutionality of a state statute when the issue is raised for the first time in the appellate court. Riley v. Smyer, 265 Ala. 475, 91 So.2d 820 (1957). She simply asks us to make an exception to that rule in this case. We decline to do so. The rule is an ancient one, founded on sound reasoning. Cooper v. Green, 359 So.2d 377 (Ala.1978)."
APCo counters that it is aware of the principle that "where a constitutional question was not raised on trial it will not be considered on appeal," City of Montgomery v. Robinson, 441 So.2d 857, 861 (Ala. 1983), but contends that this Court has considered federal constitutional claims advanced for the first time on application for rehearing, and cites Central of Georgia Ry. v. Steed, 287 Ala. 64, 76-77, 248 So.2d 110, 120-21 (1971).
The rehearing petition in that case took issue only with the statutory ten per cent affirmance penalty provision, Code 1975, § 12-22-72. Issues regarding that provision usually arise for the first time in the appellate court and do not ripen into issues until the appellate court has affirmed a judgment for plaintiff. Such issues are normally handled by motion in the appellate court after the affirmance. Thus, a rehearing, such as that in Steed, challenging the constitutionality of § 12-22-72 or its predecessor code sections, does not provide a precedent for a rehearing challenging the constitutionality of the statute authorizing the cause of action on which the suit is based.
APCo has cited no authority allowing a party to raise, for the first time, on rehearing in an appellate court the constitutionality of the statute under which the action was tried. Such a procedure is contrary to sound practice. See, for example, the many cases cited at 2 Ala.Dig., Appeal and Error, Key No. 170(2).

IV
We have carefully reviewed the findings and conclusions of the trial judge, and have reviewed the award made in this case, using essentially the same criteria we directed the trial judge to use, and we are of the opinion that the judgment of the trial court is due to be affirmed on the damages issue. Cf. General Motors Corp. v. Edwards, 482 So.2d 1176 (Ala.1985), a case involving two wrongful death claims and in which the jury awarded verdicts of $2,000,000 in each of the claims, and in which this Court upheld the trial court's remittitur which reduced the award on each claim to $1,400,000. There, this Court said:

*1306 "This Court has long recognized that appellate review of remittitur `involves a review of [the] trial court's judgment based upon [its] observation of all the witnesses who testified in the case and other incidents of the trial which cannot be reflected in the transcript and which are not available for observation by us.' Airheart v. Green, 267 Ala. 689, 693, 104 So.2d 687, 690 (1958).
"In Airheart, this Court did conclude that in a case involving our homicide statute, as this case does, `the amount of the verdict and the severity of the punishment are graded according to the degree of culpability....' 267 Ala. at 693, 104 So.2d at 691." (Emphasis added.)
APCo argues that its conduct was not so culpable as to justify an award of $1 million against it. Certainly, the culpability of APCo is as great as that of General Motors in the Edwards case.
Based on the foregoing, we are of the opinion that the application for rehearing is due to be overruled.
OPINION EXTENDED; APPLICATION OVERRULED; AFFIRMED.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY and HOUSTON, JJ., concur.
MADDOX, J., concurs in part and dissents in part.
ADAMS and STEAGALL, JJ., not sitting.
MADDOX, Justice (Concurring in part; dissenting in part).
I concur in the affirmance of the judgment of the trial court, but I cannot agree that this Court should not address the constitutional claims because they were not timely presented. By refusing to remit the amount of the judgment upon penalty of a reversal of the case, as authorized by Code 1975, § 12-22-71,[1] when requested to do so by APCo, the Court has ruled on the question of the excessiveness of the verdict independently; consequently, this case is more like Central of Georgia Ry. v. Steed, 287 Ala. 64, 76-77, 248 So.2d 110, 120-21 (1971), and not like Merrell v. Alabama Power Co., 382 So.2d 494, 497 (Ala.1980), where the constitutionality of the wrongful death statute itself was involved. Here, the company claims that this Court's refusal to remit the amount of the judgment as a condition of affirmance is a deprivation of its federal constitutional rights.
I will set out in this separate opinion why I believe the federal constitutional claims were timely presented, and why I believe the Court correctly refuses to hold that the judgment in this case is excessive.

I
Although this Court did not formally address the claims in its original opinion, the same federal constitutional claims raised on rehearing in this case were raised on application for rehearing in Aetna Life Ins. Co. v. Lavoie, 470 So.2d 1060 (Ala.1984), and this Court overruled the application. Aetna petitioned the Supreme Court of the United States to review the federal constitutional claims that had been raised in its application for rehearing, and, also, in a subsequent motion asked that this Court disqualify itself because of the alleged disqualification *1307 of one member of the Court who participated in the decision in that case. The Supreme Court of the United States took jurisdiction of Aetna's petition, and, although that Court reversed the judgment of this Court on the ground that one of this Court's Justices was disqualified, as a matter of law, the Court did discuss the other constitutional claims made by Aetna, as follows:
"Appellant also argues that the retrospective imposition of punitive damages under a new cause of action violates its rights under the Contracts Clause of Article I, Section 10; that a $3.5 million punitive damage award is impermissible under the Excessive Fines Clause of the Eighth Amendment; and that lack of sufficient standards governing punitive damage awards in Alabama violates the Due Process Clause of the Fourteenth Amendment. In addition, appellant contends that Ala.Code § 12-22-72 (1975), under which any person who unsuccessfully appeals a money judgment is assessed a 10% penalty, is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment. These arguments raise important issues which, in an appropriate setting, must be resolved; however, our disposition of the recusal-for-bias issue makes it unnecessary to reach them." (Emphasis added.)
Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 106 S.Ct. 1580, 1589, 89 L.Ed.2d 823 (1986).
Of course, I cannot tell what the Supreme Court of the United States meant when it used the term "in an appropriate setting," but I must conclude that the Supreme Court of the United States, if it desired, would hold that APCo's federal constitutional claims have been adequately presented to this Court, for purposes of federal review of those claims.
By reviewing these federal constitutional claims presented for the first time on application for rehearing, I essentially would follow the same procedure this Court followed in the Aetna case, and in Central of Georgia Ry. v. Steed, supra. I do not believe Merrell v. Alabama Power Co. is apt authority for refusing to consider the constitutional claims.

II
Because I would review the constitutional claims, the first question I necessarily would address is whether the Excessive Fines Clause of the Eighth Amendment should be held to apply to punitive damages awards in civil cases. The Supreme Court of the United States, in the Aetna v. Lavoie case, as I have already shown, did not answer the question; consequently, it is one of first impression in this state.
The parties are in sharp disagreement on the question, and I am without benefit of much precedent. My research has uncovered only one case in which the question has been decided. In Palmer v. A.H. Robins Co., 684 P.2d 187, 217 (Colo.1984), plaintiff filed a products liability claim to recover compensatory and punitive damages from the manufacturer of an intrauterine device. The trial court entered a judgment for $600,000 in compensatory damages and $6,200,000 in punitive damages. There, a divided court, addressing the manufacturer's constitutional claim, wrote:

"Cruel and Unusual Punishment. Robins argues that the punitive damages statute violates the constitutional proscription against cruel and unusual punishments and excessive fines. U.S. Const. amends. VIII and XIV. This argument centers on the proposition that the punitive damages statute fails to establish an appropriate mechanism for limiting punitive damages awards against Robins in other cases. What the argument overlooks, however, is the more fundamental proposition that the Cruel and Unusual Punishments Clause deals exclusively with the criminal process and criminal punishments. As the United States Supreme Court observed in Ingraham v. Wright, 430 U.S. 651, 667, 97 S.Ct. 1401, 1410, 51 L.Ed.2d 711 (1977), the Clause circumscribes the criminal process in three ways:
"`First, it limits the kinds of punishment that can be imposed on those *1308 convicted of crimes, e.g., Estelle v. Gamble, [429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)]; Trop v. Dulles, [356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)]; second, it proscribes punishment grossly disproportionate to the severity of the crime, e.g., Weems v. United States, [217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910)]; and third, it imposes substantive limits on what can be made criminal and punished as such, e.g., Robinson v. California, [370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962)].... "The primary purpose of [the Cruel and Unusual Punishments Clause] has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes.... Powell v. Texas [392 U.S. 514], 531-32 [88 S.Ct. 2145, 2153-54, 20 L.Ed.2d 1254 (1968)] (plurality opinion).'
The Clause, therefore, has no application to a civil proceeding involving a punitive damages claim ancillary to a civil cause of action. See Unified School District No. 490 v. Celotex Corp., 6 Kan.App.2d 346, 355-56, 629 P.2d 196, 206 (1981)."
Although the Colorado court was of the opinion that Ingraham v. Wright, 430 U.S. 651, 667, 97 S.Ct. 1401, 1410, 51 L.Ed.2d 711 (1977), supported its holding that the Excessive Fines Clause of the Eighth Amendment did not apply to a civil proceeding, I must assume that the Supreme Court of the United States will, "in an appropriate setting," address the question of whether the Excessive Fines Clause of the Eighth Amendment would apply to a civil case in which punitive damages have been awarded. Aetna Life Ins. Co. v. Lavoie, 475 U.S. at ___, 106 S.Ct. at 1589 (1986). But, see, Ex parte Watkins, 32 U.S. (7 Pet.) 568, 574, 8 L.Ed. 786 (1833), where the Supreme Court held that "[t]he eighth amendment is addressed to courts of the United States exercising criminal jurisdiction." A literal reading of the Watkins holding would be that the Bill of Rights applies only to courts exercising "criminal jurisdiction," and I am unsure at this time whether the Supreme Court of the United States will hold that the Eighth Amendment guarantee is applicable to punitive damages awards in civil cases. The language the Court used in Aetna v. Lavoie, which I have quoted above, indicates the Court will consider the Excessive Fines question "in an appropriate setting"; I believe this case is in that posture and, consequently, I would consider the question.
APCo contends that the relevant history of the Excessive Fines Clause of the Eighth Amendment and its English antecedents would require the application of that clause to punitive damages awards in civil cases. My review of the history of the Excessive Fines Clause of the Eighth Amendment and its English antecedents convinces me that the clause may be broad enough to cover punitive damages awards in civil cases.
The Supreme Court of the United States has recently reexamined the history of the Eighth Amendment and has examined English antecedents to questions arising under the amendment, Solem v. Helm, 463 U.S. 277, 284-86, 103 S.Ct. 3001, 3006-07, 77 L.Ed.2d 637 (1983); Ingraham v. Wright, 430 U.S. at 664-66, 97 S.Ct. at 1408-09, and there is some support for APCo's position that "the historical antecedents to the Excessive Fines Clause support the contention that it should be applied to civil punitive damages awards." APCo contends that the Excessive Fines Clause can be traced to the "excessive amercement" provision of the Magna Charta, and that "amercements" were additional punishment for defendants in civil cases in 13th-Century England. In its brief, APCo argues:
"One response to the problems of punitive damages law has been substantive. That is, some jurisdictions have disallowed punitive damages in particular types of cases and for particular types of defendants. For example, several states have eliminated the remedy in wrongful death cases, and the United States Court of Appeals for the Ninth Circuit has explained that the basis for that exception lies in the dangers of `excessive liability' and `the temptation for a jury to award punitive damages even when concrete elements *1309 of ... intentional wrongdoing are absent. [Citing in a footnote: In re Paris Air Crash, 622 F.2d 1315 (9th Cir.) (applying California law), cert. denied, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).] Ironically, the very same legislatures do permit punitive damages in survival actions, where the plaintiff is allowed to present graphic evidence of the decedent's pain and suffering."
In a footnote, APCo points out, as I have already suggested, that the Supreme Court of the United States in Aetna v. Lavoie, supra has indicated that it would probably take jurisdiction of a case "in an appropriate setting" to resolve this constitutional issue. For the purpose of deciding this case, I assume that the Excessive Fines Clause does apply, but even assuming that the Excessive Fines Clause of the Eighth Amendment applies to this punitive damages award, I am of the opinion that the award made in this case does not constitute an "excessive fine."

III
I am aware of the public policy issues which are presented in civil cases in which juries award substantial damages, and this Court, using various procedures available to it, has attempted to insure that justice is meted out to parties to civil litigation; however, in many cases we are dealing with provisions of substantive law, and changes in that law are appropriately made by the legislative branch of government. See, Wheeler, The Constitutional Case for Reforming Punitive Damages Procedures, 69 Va.L.Rev. 269 (1983).
We remanded this case for the trial court to consider once again the argument that the punitive damages award was excessive, under the principles of Hammond, supra. In Hammond, we set out several factors to be considered, including the culpability of the defendant's conduct and the desirability of discouraging others from similar conduct, but we stated that the factors set out were by "no means exclusive." Hammond involved a claim of fraud. This is a wrongful death case, and I am of the opinion that because it is a wrongful death action, this is another factor that can, and should, be considered when assessing the claim that a punitive damages award is excessive.

IV
APCo additionally argues that the punitive damages award violates rights guaranteed to it under the Equal Protection Clause of the Fourteenth Amendment. It states, in its brief:
"The disparity in punishment and penalties imposed for negligent homicide in Alabama in civil versus criminal cases also violates equal protection rights afforded under the Fourteenth Amendment to the U.S. Constitution. This distinction should be subject to `strict scrutiny,' when, as here, it enables the state to circumvent the guaranties of the Fourth and Sixth Amendments by imposing punishment through civil prosecution. The deprivation of these fundamental rights requires that Alabama's wrongful death statute be narrowly drawn to satisfy any alleged compelling state interest. Schad v. Borough of Mount Ephraim, 452 U.S. 61, 68 [101 S.Ct. 2176, 2182, 68 L.Ed.2d 671] (1981); Dunn v. Blumstein, 405 U.S. 330, 338-39 [92 S.Ct. 995, 1001, 31 L.Ed.2d 274] (1972).
"Even if this infringement were not sufficient to justify strict scrutiny, this distinction has no rational basis. The Equal Protection Clause, at a minimum, requires this much. Arlington County Bd. v. Richards, 434 U.S. 5 [98 S.Ct. 24, 54 L.Ed.2d 4] (1977); Village of Belle Terre v. Boraas, 416 U.S. 1, 8 [94 S.Ct. 1536, 1540, 39 L.Ed.2d 797] (1974). While there may be a basis for imposing greater punishment upon criminal defendants due to the State objective to promote respect for the criminal laws and due to the application of increased standards of proof and procedural safeguards, there is certainly no rational basis for imposing more severe punishment on civil defendants. Accordingly, this counterintuitive distinction is unconstitutional, for it is imposed without any `rational basis.'

*1310 "In summary, numerous courts have declared their disfavor of punitive awards substantially greater than corresponding criminal monetary penalties. Jameson v. Zuehlke, 218 S.W.2d [326, 333] 907, 911-912 (Tex.Civ.App. [1948] 1938); Jasterbowski v. Michos, [44 Ohio App.2d 201] 337 N.E.2d 627, 631-32 (Ohio App.1975); Roginsky v. Richardson-Merrell Inc., 378 F.2d 832, 839-41 (2nd Cir.1967). Alabama's statutory scheme, in its allowance of such severe disparity in punishment for wrongful death resulting from negligence, should also be seriously questioned and upon close consideration by this Court, declared unconstitutional in its denial of equal protection rights."
I cannot agree with APCo that Alabama's Wrongful Death Statute is unconstitutional because it authorizes the recovery of punitive damages in excess of a fine which might be levied against it in a criminal proceeding.

V
Whether the federal constitutional claims were timely raised is a question which the Supreme Court of the United States will have to decide if it grants a review of this Court's judgment. See Aetna Life Ins. Co. v. Lavoie, 475 U.S. at ___, 106 S.Ct., at 1589, 899 L.Ed.2d 823 (1986). Cf. Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979).

VI
Based on the foregoing, I agree that the majority correctly refused to order a remittitur, but I respectfully dissent from that portion of the opinion which holds that the federal constitutional claims were not timely presented to this Court.
NOTES
[1] APCo does not claim that the punitive damages award also violates the "excessive fines" provision of our own Alabama Constitution. See, Art. I, § 15, Constitution of Alabama, 1901, which has been in every Constitution since 1819, when Alabama became a state.
[1] Section 12-22-71 reads as follows: "When an appeal is taken to the appropriate appellate court from the judgment of any court and the appellate court shall be of the opinion that the case should be reversed because the judgment of the lower court is excessive and that there is no other ground of reversal, the appellate court shall notify the appellee of the amount which it deems in excess of the just and proper amount of recovery and require the appellee, within a time to be stated in said notice, to remit such amount upon penalty of a reversal of the case. If the appellee does not, within the time stated in such notice or within such further time as may be granted by the court for good reason file a remittitur of such excessive amount, the appellate court shall reverse and remand the case; but, if the appellee shall file with the court a remittitur of the amount deemed excessive by the court, the appellate court shall reduce the amount of the judgment accordingly and shall affirm the case and enter a judgment for such reduced amount, which judgment so entered shall be and remain the judgment of the lower court and shall date back to the time of the entry or rendition of the judgment in the lower court. (Acts 1915, No. 542, p. 610; Code 1923, § 6150; Code 1940, T. 7, § 811.)"