514 So.2d 1249 (1986)
BLACK BELT WOOD COMPANY, INC.
v.
Leonard Earl SESSIONS, as Administrator of the Estate of James Karl Sessions, deceased.
84-1222.
Supreme Court of Alabama.
October 3, 1986.
On Return After Remand June 30, 1987.
Rehearing Denied October 2, 1987.
*1250 Jack B. Porterfield, Jr. and William T. Mills II, Porterfield, Scholl, Bainbridge, Mims & Harper, Birmingham, for appellant.
Alex W. Newton of Hare, Wynn, Newell & Newton, and R. Gordon Pate of Pate, Lewis & Lloyd, Birmingham, for appellee.
PER CURIAM.
This action involves an accident which occurred on February 7, 1980. On that day, James Karl Sessions, a young man 19 years of age, was driving his automobile on a street in York, Alabama. A log truck traveling in the opposite direction met the car Sessions was driving. Just as the vehicles were in the process of meeting each other, a log, which weighed between 300 and 500 pounds, came off the truck and crushed the automobile which young Sessions was driving, killing him instantly. S and T Trucking Company (S & T) owned the truck and Robert T. Poole, an employee of S & T, was driving the truck. Black *1251 Belt Wood Company, Inc. (Black Belt) loaded the pulpwood trailer.
This is the second time that this case (and the issue of Black Belt's negligence in loading the truck) has been before this Court. See, Black Belt Wood Co. v. Sessions, 455 So.2d 802 (Ala.1984). Leonard Earl Sessions, plaintiff/appellee, originally filed suit against American Can Company, Black Belt, S & T, Robert Poole, and John Tidmore, principal owner of S & T, a corporation. At the conclusion of the first trial, the court granted Tidmore's motion for directed verdict and the jury returned a verdict in favor of Black Belt, American Can Company, and Robert Poole. A verdict was returned against S & T and in favor of Sessions in the amount of $250,000.
Sessions filed a motion for judgment notwithstanding the verdict, as to American Can Company, Black Belt, and Robert Poole, or, in the alternative, for a new trial against all defendants. The trial court granted a new trial in favor of Sessions and against Robert Poole, S & T, and Black Belt, but not against American Can Company.
Black Belt appealed the trial court's order. This Court originally held that the trial court erred as a matter of law and reinstated the jury verdict in favor of Black Belt. On Sessions's application for rehearing, this Court reversed its holding and affirmed the trial court's order granting a new trial. Black Belt's application for rehearing was denied.
The case was tried a second time. Black Belt filed a motion for a directed verdict, which was denied. The jury returned a verdict against Robert Poole, S & T, and Black Belt in the amount of $3,500,000. Black Belt filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial, which was denied. This appeal followed.
Black Belt presents seven issues on appeal. We will first address Black Belt's contention that the trial court erred when it failed to grant Black Belt's motion for directed verdict, or, in the alternative, its motion for judgment notwithstanding the verdict.
The law of Alabama is clear as to the standards for testing a motion for directed verdict and a motion for judgment notwithstanding the verdict (JNOV). The standard for testing a motion for directed verdict is identical to that for testing a motion for JNOV. Casey v. Jones, 410 So.2d 5 (Ala.1981). Both motions test the sufficiency of the evidence. Wright v. Fountain, 454 So.2d 520 (Ala.1984). These motions should be denied if there is any conflict in the evidence for the jury to resolve, and the existence of such conflict is to be determined by the scintilla rule. Hanson v. Couch, 360 So.2d 942 (Ala.1978).
We are of the opinion that a scintilla of evidence was presented by the appellee to support his position that Black Belt negligently loaded the logs. The evidence reveals that the logs belonged to Black Belt and that Black Belt employees loaded the logs. Black Belt knew that the logs were going to be transported a distance of approximately 60 miles. There was also testimony presented that logs loaded in the same manner by Black Belt had fallen off trucks on previous occasions. After examining the pictures of the particular load in this case, Mr. Tidmore, one of the owners of S & T, testified that the logs were improperly loaded. He also testified that complaints had previously been made to Black Belt that some of its trucks had been improperly loaded.
Black Belt also argues that negligence in the loading of the logs in an improper manner could not have been the proximate cause of the accident because it was the duty of the driver to keep the logs properly secured by chains. Black Belt relies on Vines v. Plantation Motor Lodge, 336 So.2d 1338 (Ala.1976). In Vines this Court stated:
"Negligence alone does not afford a cause of action. Liability will be imposed only when negligence is the proximate cause of injury; injury must be a natural and probable consequence of the negligent act or omission which an ordinarily prudent person ought reasonably to foresee would result in injury. If, between *1252 the alleged negligent act or omission and the injury, there occurs an independent, intervening, unforeseeable event, the causal connection between the alleged negligence and the injury is broken. Mobile City Lines, Inc. v. Proctor, 272 Ala. 217, 130 So.2d 388 (1961); Mahone v. Birmingham Electric Co., 261 Ala. 132, 73 So.2d 378 (1954)."
Vines, at 1339 (emphasis added.)
In this case, Black Belt should have reasonably foreseen an injury occurring. The evidence in this case is that these big logs frequently fall off trucks and that complaints had previously been made to Black Belt that some of the trucks had been improperly loaded. Black Belt did nothing to change its practices before this accident occurred and, by the time of the trial, had made no changes in its method of operation.
We are of the opinion that the trial court did not err when it denied Black Belt's motion for a directed verdict, or, in the alternative, JNOV.
Black Belt's second contention on appeal is that the trial court erred when it failed to grant its motion for a new trial. Black Belt argues that the great preponderance of the evidence was that the loading was proper.
The decision of whether to grant or deny a motion for a new trial rests within the sound discretion of the trial court. Hill v. Cherry, 379 So.2d 590 (Ala.1980). A denial of a motion for new trial strengthens the presumption of correctness afforded a jury verdict, Osborne v. Cobb, 410 So.2d 396 (Ala.1982), and the decision of the trial court will not be disturbed unless the verdict is against the preponderance of the evidence, or is clearly wrong or unjust. Shiloh Construction Co. v. Mercury Construction Corp., 392 So.2d 809 (Ala.1980).
This Court stated in its original opinion in this case:
"[T]he evidence plainly and palpably supports a finding that Black Belt negligently loaded the truck. Indeed, in addition to the evidence relating to the allegedly negligent loading process, the evidence is without dispute that S & T's driver stopped the truck more than once before the accident in an effort to tighten the chains and better secure the load of logs, all of which evidence raised a reasonable inference of improper loadingthe function of Black Belt, with knowledge that the truck would be operated upon a public highway."
After re-examining the record, and from the evidence set forth above, we conlcude that the evidence supports the verdict in favor of Sessions and against Black Belt.
Black Belt's third contention to this Court is that the trial judge erred in his instructions to the jury. Black Belt argues that Code 1975, § 32-5-76(a), was inapplicable and that the reading of it was inappropriate and constituted reversible error.
The trial court, in its instructions, stated:
"I am going to read to you from the next following section or a portion thereof that says this: [32-5-76(b)] `No vehicle shall be driven or moved on any highway unless and until such vehicle is so constructed or loaded as to prevent any of its load from dropping, sifting, leaking or otherwise escaping therefrom, except that sand may be dropped for the purpose of securing traction, or water or other substance may be sprinkled on a roadway in cleaning or maintaining such roadway.'
"Now, that (b) part refers back to a portion of (a). And I am going to say to that part that you should consider as a total of section 76 says this, that anyone `whoever willfully and knowingly operates, owns or causes to be operated on any public highway, road or street a motor vehicle so loaded with gravel, rocks [sic], slag, bricks, sawdust, chips, wood products or other like substances,' then that's the type of vehicle they are talking about in (b) when it says no vehicle, that's the one they are talking about. You may consider this section in arriving at a decision in this case but I say to you this, that I charge you that a violation of section 76 is not negligence per se or as a matter of law."
Code 1975, § 32-5-76, states:
"(a) Whoever willfully and knowingly operates, owns or causes to be operated *1253 on any public highway, road or street a motor vehicle so loaded with gravel, rock, slag, bricks, sawdust, chips, wood products or other like substances, in such manner or in such condition that the contents of the vehicle spill out and endanger the safety of the persons or property of motorists and pedestrians, is guilty of a misdemeanor and upon conviction shall be fined not more than $100.00.
"(b) No vehicle shall be driven or moved on any highway unless such vehicle is so constructed or loaded as to prevent any of its load from dropping, sifting, leaking or otherwise escaping therefrom, except that sand may be dropped for the purpose of securing traction, or water or other substance may be sprinkled on a roadway in cleaning or maintaining such roadway. (Acts 1927, No. 347, p. 348; Code 1940, T. 36, § 39; Acts 1949, No. 517, p. 754, § 9; Acts 1971, No. 1419, p. 2423)."
Black Belt argues that § 32-5-76(a) applies only to vehicles and to the owner and/or operator of a vehicle, and that Black Belt was neither. Black Belt also asserts that it did not "cause" the truck "to be operated."
The trial court properly instructed the jury on the applicability of § 32-5-76(b) to Black Belt. This case was tried on the theory of Black Belt's negligence in loading the logs with knowledge that the truck had to travel a distance of sixty miles over rough roads. The trial court correctly set forth the substantive law applicable to Black Belt, and the trial court's charge to the jury regarding this section does not appear to be prejudicial. See, Rannells v. Graham, 439 So.2d 12 (Ala.1983).
The fourth issue presented is whether the trial court erred when it refused to instruct the jury from the Alabama Pattern Jury Instructions, (A.P.J.I.) namely: 3.16, 3.17, and 1.12. Black Belt contends that the trial court erred when it failed to instruct the jury as to independent contractors. Black Belt also argues that the failure to give the pattern jury instructions misled the jury as to the responsibility of the various defendants with regard to the transportation of the pulpwood.
A.P.J.I. 3.16 and 3.17 deal with the definition and rule regarding the liability of independent contractors. There was no contention in the trial of this case that Black Belt was an independent contractor of S & T or that S & T was an independent contractor of Black Belt. At the first trial, this contention was made, but it was abandoned and never referred to or made an issue in the second trial. The failure of a trial court to give an abstract charge, one hypothesized on facts which had no support in the evidence, does not constitute reversible error. Coulter v. Holder, 287 Ala. 642, 254 So.2d 420 (1971). Furthermore, the trial court made it clear in its instructions that the jury could find either against Black Belt because of its negligence in the loading of the logs and securing them on the truck or, against S & T for its negligence alone in operating the truck, or against both of them.
Black Belt requested that the trial court give A.P.J.I. 1.12 which involves sympathy. This request was also abstract and, therefore, correctly denied. The trial court covered 1.12 when it instructed the jurors that they were to use their good sound judgment in making a determination, after considering the credibility of the witnesses, the enormity of the wrong, and the necessity for preventing similar wrongs. In addition, both attorneys, in their closing arguments, argued to the jury that sympathy should not play a part in their deliberations. We are of the opinion that the trial court did not err when it refused to give A.P.J.I. 3.16, 3.17 and 1.12.
The fifth issue presented by Black Belt is whether the trial court erred when it refused to grant a mistrial or a new trial when counsel for Sessions requested the jurors to place themselves in the place of the litigants and further commented on the failure of certain people to testify. Black Belt first argues that Mr. Newton (Sessions's counsel), in his closing argument, asked the jury to place themselves in the position of a party to the action. That *1254 portion of the argument to which Black Belt objected is set forth below:
"MR. NEWTON: ... I will approach this task as I have tried to seriously just as you would want it if you were on the front row in this courtroom.
"MR. PORTERFIELD: Now, just a minute, if it please the Court. That's an illegal comparison to place this jury in the position of these parents and I will object to it and ask for a mistrial.
"THE COURT: I will sustain the objection and overrule your motion for a mistrial but I must caution the jury that you are not to put yourself in the position of the litigants. You do have to remain objective in deciding the outcome of this case and with that caution we'll proceed.
"MR. PORTERFIELD: Except.
"MR. NEWTON: Just as if you were in litigation. That's the way you would want it. And I don't know if
"MR. PORTERFIELD: Now, just a minute. He is saying the same thing just another way.
"MR. NEWTON: I am not saying that.
"MR. PORTERFIELD: Yes, he is. Let the Court rule.
"THE COURT: Well, I am going to sustain, Alex, and I think the jurors are not to be considered as litigants or put themselves in the position of a litigant in this matter. All right."
Black Belt also contends that plaintiff's counsel made improper arguments about Black Belt's failure to call certain witnesses to testify. Newton stated in his closing argument:
"Because with all the connections that you will take under this evidence that Black Belt would have the best evidence that they can bring you about the proper loading is right there sitting in the courtroom. And he says they are equally available to us. And, now, listen, do you think Johnny Allen, the man that I am suing, is equally available to me? Who is he trying to fool?"
An appeal to the jury to stand in the shoes of the litigant is considered improper. The courts, however, have not been overly restrictive in their application of this rule. Fountain v. Phillips, 439 So.2d 59 (Ala. 1983). In a case where an objection to improper argument is made and sustained, with the trial court instructing the jury that the argument was not correct, the test on appeal is "whether the argument was so harmful and prejudicial that its influence was not or could not be eradicated by the action of the court." Estis Trucking Co. v. Hammond, 387 So.2d 768 (Ala.1980). We have stated that this Court should not encroach on the trial court's discretion in these cases. "Much must be left in such matters to the enlightened judgment of the trial court, with presumptions in favor of the ruling." British General Insurance Co. v. Simpson Sales Co., 265 Ala. 683, 93 So.2d 763 (1957).
We have carefully considered the record of the argument, the evidence, and the actions taken by the court. After considering these factors, we are of the opinion that the argument was not so harmful and prejudicial that its influence was not or could not be eradicated by the action of the trial court.
The general rule, as to the availability of witnesses, is that a party cannot comment in argument upon the failure of his opponent to call a particular witness if the witness is equally accessible to both parties. Donaldson v. Buck, 333 So.2d 786 (Ala.1976). This is not an automatic rule; cases exist where a potential witness favors one party over another and the witness is not "equally accessible." Harrison v. Woodley Square Apartments, 421 So.2d 101 (Ala.1982).
Mr. Newton, in his closing argument, referred only to the failure of Johnny Allen to testify. Allen was the manager of the wood yard at the time of the accident and his father owned Black Belt. Plaintiff presented evidence at trial regarding complaints made to Allen concerning improper loading, and the comment on Black Belt's failure to refute this evidence, we believe, was not improper. Because Allen's father owned Black Belt, it is not unreasonable to believe that Allen, if called *1255 as a witness, would have testified favorably for Black Belt. Under these circumstances, we cannot find that Johnny Allen was "equally accessible" to both parties, as that principle normally applies. We do not find that the trial court abused its discretion in overruling the objection.
The sixth issue raised on appeal is whether the trial court erred in failing to grant Black Belt's challenge for cause with regard to juror Melton.
During the voir dire examination of the panel of potential jurors, the following questions and answers arose with regard to juror Melton.
"MR. PATE: You have suggested something that I need to ask about, so I appreciate that. Have any of you ever experienced the loss of a close family member in aI don't know a better way to put it, in a tragic situation or a tragic accident, an unexpected event? I am not limiting it to automobile accidents, any sort of tragic event where you lost a member of your family? I have to ask that.
"* * *
"MS. MELTON: My grandson was killed in an automobile accident.
"MR. PATE: Your grandson?
"MS. MELTON: About three years ago.
"MR. PATE: About three years ago?
"MS. MELTON: Yes.
"* * *
"MR. PATE: Let me finish with this, and I told you maybe some of my questions wouldn't be clear to you and this may be one of them, but bear with me. Lawyers can't go into your mind and we shouldn't be able to, but yet I want to know if there is any reason, knowing what you know about this case, knowing that it's going to deal with the death of a young man and what we, of course, ascertain as a tragic, senseless accident; knowing those facts, do any of you have any reason which you are thinking to yourself I really would rather not serve on this case. This is not the kind of case that I want to be involved in or make a decision about? Ms. Melton?
"MS. MELTON: I would rather not.
"MR. PATE: You would rather not?
"MS. MELTON: Yes."
Black Belt's attorney later returned to juror Melton and asked these questions:
"MR. PORTERFIELD: Two. A lawyer can't ask one question. I want to apologize to Ms. Melton because I should ask this because you made a statement and nobodyyou said you didn't want to serve in this case on this jury.
"MS. MELTON: I feel I couldn't be objective.
"MR. PORTERFIELD: Now, would you tell us why? I think you are entitled that.
"MS. MELTON: Because of my grandson being killed in this accident and there was a case.
"MR. PORTERFIELD: And you think the fact that he died as a result of an accident, you think that you might be prejudiced against the person who was operating the vehicle that may have been responsible?
"MS. MELTON: I feel that I am too emotional about that and this was a case that he was not the driver.
"MR. PORTERFIELD: I believe that she should be excused for cause."
The test for determining whether a juror should be disqualified for bias or prejudice was set forth by the Court in Village Toyota Co. v. Stewart, 433 So.2d 1150, 1156 (Ala.1983), quoting from Alabama Power Co. v. Henderson, 342 So.2d 323, 327 (Ala. 1976), as follows:
"The test to be applied is probable prejudice. Probable prejudice for any reason disqualifies a prospective juror. Qualification of a juror is a matter within the discretion of the trial court and, on appeal, this court will look to the questions propounded and the answers given by the prospective juror to see if this discretion was properly exercised."
The trial court is vested with broad discretion in determining whether to sustain challenges for cause, and the trial court's decision will not be interfered with unless *1256 clearly erroneous. Brown v. Woolverton, 219 Ala. 112, 121 So. 404 (1928).
In this case, the record reveals that juror Melton never said that she could not be fair. She, at one time, stated that she would rather not serve, but in answer to the direct question as to whether she would be prejudiced, she simply said that she felt she was too "emotional." The trial judge, after conferring with the lawyers, and being in a position to observe the demeanor of juror Melton, the manner in which she answered the questions, and her appearance, overruled the challenge for cause and stated: "I think that all Mrs. Melton said was that she didn't want to sit on this case." After reviewing the record, we cannot say that the trial court abused its discretion in disallowing the challenge of Mrs. Melton for cause.
Seventh, and finally, Black Belt contends that the $3.5 million damage award was excessive. Black Belt, in its motion for a new trial, argued that the verdict was excessive and a result of bias and passion. Here, Black Belt argues that the $3.5 million verdict is excessive, particularly in light of the fact that the first jury found in favor of Black Belt and returned a verdict of only $250,000 against S & T.
We do not at this time decide this issue, but we remand the cause to the trial court to review its judgment in accordance with the guidelines set out in our recent decisions in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); Harmon v. Motors Insurance Corp., 493 So.2d 1370 (Ala. 1986); and Alabama Farm Bureau Mutual Cas. Ins. Co. v. Griffin, 493 So.2d 1379 (Ala.1986) (on rehearing). The trial court, in its discretion, may or may not order a further hearing to reconsider the claim that the verdict is excessive. In any event, the trial court is directed to report its findings and conclusions within 28 days of this opinion.
We remand this case to the trial court for further consideration consistent with this opinion.
AFFIRMED, IN PART; AND REMANDED, WITH DIRECTIONS.
TORBERT, C.J., and JONES, ALMON, SHORES, ADAMS and STEAGALL, JJ., concur.
MADDOX, J., concurs specially.
BEATTY and HOUSTON, JJ., not sitting.
MADDOX, Justice (concurring specially).
On the first appeal of this case, I was of the opinion that the trial court improperly ordered a new trial in the case as to Black Belt, and I authored the opinion which so held. On application for rehearing, however, the Court issued a new opinion, in which a majority of this Court held that the original opinion was in error, and opined as follows:
"While the trial court's granting of a new trial, where the verdict is plainly and palpably supported by the evidence, is an abuse of its discretionary prerogative, we are obliged to indulge a presumption of correctness in favor of a new trial order where, as here, it is highly probable that the verdict under review is the result of confusion or misunderstanding or is inconsistent in law or in fact. Cobb v. Malone, 92 Ala. 630, 9 So. 738 (1891). Therefore, because we believe the trial judge properly perceived his discretionary role in preventing an unfair and unjust result under the circumstances, we affirm his order granting a new trial as to all three defendants."
I dissented from that on-rehearing opinion, stating that "I would deny rehearing because I am of the opinion that the law is correctly stated in the majority opinion as originally written." Joining me in my dissent were Justices Faulkner and Beatty. Nevertheless, plaintiff was given the right, at that time, by a majority of this Court, to try the case again before another jury. Because that judgment was final, and plaintiff obtained the right to try the case again, I am of the opinion that the plaintiff legally obtained the right to obtain a judgment against Black Belt in another proceeding. Consequently, it is my opinion that plaintiff, having obtained a right to a *1257 new trial, is entitled to a review of the new trial without regard to my dissenting views on the first appeal, and that the judgment in this new trial must be based upon the principles of law as they exist today.

ON RETURN AFTER REMAND
PER CURIAM.
On original deliverance, this Court affirmed the judgment of the trial court, but remanded the cause to the trial court with directions to review its judgment in accordance with guidelines set out in our decisions in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); Harmon v. Motors Insurance Corp., 493 So.2d 1370 (Ala. 1986); and Alabama Farm Bureau Mutual Cas. Ins. Co. v. Griffin, 493 So.2d 1379 (Ala.1986), and to determine whether, in its opinion, the judgment in the amount of $3.5 million should be reduced.
On remand, the trial court conducted a hearing, and entered the following order, which we quote in its entirety:
"The Supreme Court of Alabama on October 3, 1986, remanded this case to the trial court for further consideration consistent with their opinion.
"The order of remand is as follows:
`"Seventh, and finally, Black Belt contends that the $3.5 million damage award was excessive. Black Belt, in its motion for a new trial, argued that the verdict was excessive and a result of bias and passion. Here, Black Belt argues that the $3.5 million verdict is excessive, particularly in light of the fact that the first jury found in favor of Black Belt and returned a verdict of only $250,000 against S & T.
"`We do not at this time decide this issue, but we remand the cause to the trial court to review its judgment in accordance with the guidelines set out in our recent decisions in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); Harmon v. Motors Insurance Corp., 493 So.2d 1370 (Ala. 1986); and Alabama Farm Bureau Mutual Cas. Ins. Co. v. Griffin, 493 So.2d 1379 (Ala.1986) (on rehearing). The trial court, in its discretion, may or may not order a further hearing to reconsider the claim that the verdict is excessive. In any event, the trial court is directed to report its findings and conclusions within 28 days of this opinion.'
"Pursuant to the order of remand the trial court, ex mero motu, held a hearing on October 14, 1986, at which time the attorneys for the plaintiff and the defendant, Black Belt Wood Company, Inc., were present in court. The defendant, Black Belt, on October 14, 1986, filed with the clerk of this court, a brief in support of remittitur or new trial and was argued at the remand hearing. In addition, the parties have submitted to the trial court portions of their respective briefs submitted to the Supreme Court on the damages issue and statement of the facts. The appellant's brief on the damages issue is designated VI and covers Pages 50-54 inclusive. The appellee's brief covers this point under Section VI, Pages 43-47 inclusive. The reply brief of the appellant covers this point in Section VI on Page 22. After listening to arguments of counsel and citations of authority, the matter was submitted and taken under advisement by the court.
"The order of remand quoted above, directs the trial court to reconsider the question of excessiveness particularly in light of the fact that the first jury found in favor of Black Belt and returned a verdict of only $250,000 against S & T. I would like to point out to the Supreme Court and make crystal clear in the record that the undersigned did not try the case originally. The first appeal in this case is Black Belt Wood Co. v. Sessions, 455 So.2d 802, and the Honorable N. Daniel Rogers, Jr. was the trial judge. Also, the parties and trial attorneys were not the same as on the second trial on this case.
"Additionally, in its order of remand, the Supreme Court directed this court to review its judgment in accordance with the guidelines set out in the recent decisions of Hammond, [supra], and Alabama Farm Bureau Mutual Cas. Ins. Co. (on rehearing) [supra].
"The court has considered the above cited cases with respect to the guidelines set *1258 out therein. However, this court finds that none of the above cited cases are death cases but rather are cases wherein both compensatory and punitive damages were sought to be recovered. A comparison between the compensatory damages against the punitive damages award would be one method to determine whether the damages are excessive or not. This method is not available in a death action.
"The plaintiff brought this action under Section 6-5-410, Code of Alabama 1975. Subdivision (a) of this section reads as follows:
"`A personal representative may commence an action and recover such damages as the jury may assess in a court of competent jurisdiction within the state of Alabama, and not elsewhere, for the wrongful act, omission or negligence of any person, persons or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, provided the testator or intestate could have commenced an action for such wrongful act, omission or negligence if it had not caused death.' (Emphasis supplied.)
"A reading of the cases interpreting this code section reveals that the paramount purpose of wrongful death statutes is the preservation of human life. Wrongful death acts are intended to protect human life, to prevent homicide and to impose civil punishment on takers of human life. Only punitive damages are recoverable under the act.
"Black Belt in its brief to the Supreme Court, on motion for new trial and the brief on remand has argued that the $3.5 million verdict is excessive. Particularly in light of the fact that a prior jury had returned a verdict in favor of Black Belt and that the prior jury had returned a verdict of only $250,000 against S & T. The conclusion reached by Black Belt is that the verdict of $3.5 million is the result of bias, passion, prejudice, corruption or other improper motive or cause simply because of the sheer size of the verdict.
"The trial court has reviewed its charge to the jury on the issue of damages. This court finds that it correctly instructed the jury on the damages issue. The jury was instructed that damages provided for in a death action are punitive only. That the damages are imposed by way of punishment to the wrongdoer to deter the wrongdoer and others from similar wrongdoing in the future. That the damages in this type of action are entirely punitive, imposed for the preservation of human life and as deterrent to others to prevent similar wrongs. In addition, the jury was instructed that if they found in favor of the plaintiff and against any or all the defendants in assessing the damages, they should take into consideration and give due regard to the enormity of the wrong and the necessity of preventing similar wrongs in the future. Thus, the purpose of the damages award is not only punitive but also deterrent. Therefore, not only must the degree of appellant's culpability be gauged but also the necessity of preventing similar occurrences in the future.
"Black Belt, in oral argument and written brief, points out the fact that the case was submitted to the jury on the negligence theory only. This court finds that it did not `charge out' the wanton misconduct claim of the plaintiff but rather the plaintiff waived or withdrew this claim due to the fact that the defendants did not plead contributory negligence as a defense.
"The court submitted to the jury the issue as to whether or not the defendants' negligence combined and concurred to cause the death of the plaintiff's decedent. The jury found in favor of the plaintiff and against all defendants. This being true, we now come to an issue which the parties have not addressed but which the court finds is helpful in resolving the damages issue. That is, the combined culpability of all defendants considered in determining whether the jury award is excessive.
"The Supreme Court of Alabama in the case of Bell v. Riley Bus Lines, 257 Ala. 120, 57 So.2d 612 [1952], held that in a death action against multiple defendants, the Homicide Act does not authorize the jury to apportion damages against tort-feasors nor does it recognize degrees of culpability, *1259 but simply entitles plaintiff to recover such damages as the jury may assess. In a tort action, a single verdict is required fixing a lump sum regardless of culpability of tortfeasors. Also, the Supreme Court in the case of Robbins v. Forsburg, 288 Ala. 108, 257 So.2d 353 [1972], restated this well settled rule. In Robbins, the Supreme Court reversed the trial court for giving an instruction which charged that the jury could not return a verdict `against more than one defendant unless you are reasonably satisfied from the evidence that each is equally deserving of punishment.' The Supreme Court held that this charge was erroneous and prejudicial to the plaintiff. In Robbins, the appellees urged the Supreme Court to find that if a plaintiff elects to sue the defendants jointly in a death case, that the amount of the verdict must be measured by the guilt of the more innocent of them. (Emphasis supplied.) This seems to be the position of Black Belt in this case. Our cases are clear to the conclusion that Alabama does not allow apportionment. Again from Robbins as follows:
"`Alabama seems to follow a different rulerequiring a single verdict, fixing a lump sum regardless of the culpability of the tort feasorseven in actions where the damages recoverable are punitive.'
"Taking into consideration the foregoing, the court finds that the jury was authorized to consider the combined and concurring culpability of all the defendants and not simply the culpability of the defendant Black Belt. The court finds that in a case where there are multiple defendants and the jury finds all of them guilty of negligence which combined and concurred to injure the plaintiff, the entire jury award may be visited on the most innocent of them.
"The court finds, after a review of the entire trial, that the sole issue presented on remand is whether or not a jury verdict in the amount of $3.5 million is in and of itself evidence of bias, passion, prejudice, corruption, or other improper motive or cause. The court cannot call to mind nor have the attorneys for Black Belt pointed out to the court any factor that would be construed to indicate bias, passion, prejudice, corruption, or other improper motive or cause on the part of the jury other than the size of the verdict. This court feels compelled to comment that although Judge Rogers tried the first jury case, this court is being called upon to express an opinion as to why the first jury found in favor of Black Belt and returned a verdict of only $250,000 against S & T. I have no explanation nor do I feel that I am in a position to express one having no knowledge of the first trial whatsoever. Assume for the sake of discussion that the first jury had returned a verdict of $3.5 million and that the second jury returned a verdict of $250,000. What should be the position of the trial court in this event? Is the first trial to be a `cap' on the damages issue or not?
"This court also finds that the remand order stated in a different way calls upon the undersigned to explain why it did not order a remittitur of the $3.5 million verdict as being excessive. This calls upon the undersigned to express a negative. This puts the trial court in the position of having to justify the verdict of the jury in the event that a remittitur is not ordered. A trial court would be in a more favorable position to recite factors justifying a remittitur rather than factors why it did not order a remittitur.

"FINDINGS
"1. Alabama law is that a remittitur or a new trial should not be ordered on the grounds of excessiveness of the jury's verdict except where the court can clearly see that the verdict is tainted by bias, passion, prejudice, corruption, or other improper motive or cause on the part of the jury.
"2. There was absolutely no testimony nor inference therefrom that the plaintiff's decedent was guilty of any contributory negligence.
"3. The court finds that the jury considered the combined culpability of all defendants in assessing damages.
"4. The trial court has not been able to determine any factor which could be considered as bias, passion, prejudice, corruption, *1260 or other improper motive or cause by the jury. The trial court closely observed the jury, the parties involved, the attorneys involved in the case and the court is satisfied and convinced that the verdict was not tainted.
"5. This court finds that to express to the appellate court why the jury returned a verdict of $3.5 million in this case would require the trial court to read the minds of the jury. This the trial court cannot do nor would it attempt to do. To do so, would require the trial court to invade the province of the jury.

"CONCLUSION
"The trial court finds that the $3.5 million verdict is not excessive and is not the result of bias, passion, prejudice, corruption, or other improper motive or cause.
"The trial court is frank to say that had it tried this case without a jury, it would have awarded a lesser sum of damages than that reached by the jury. However, the trial court cannot substitute its opinion for that of the jury.
"DONE and ORDERED this the 21st day of October, 1986.
 "/s/ Claude Hughes
 "CLAUDE HUGHES,
 JUDGE"
After this Court received the trial court's order on remand, we entered a new order requesting briefs on the question of "whether or not the trial court should be authorized to consider the culpability of each individual defendant in a wrongful death action where punitive damages only are recoverable," and we also requested briefs on the issue of the excessiveness of the damages. The parties have filed briefs in support of their respective positions regarding the issues presented, and we now proceed to consider their arguments and address the legal issues involved.
One basic question is presented on this review:
Should this Court change its longstanding rule that there can be no apportionment of damages among joint tortfeasors, especially in death cases where this Court has concluded that only punitive damages are recoverable?
Based upon a review of the history of § 6-5-410 and a review of cases from other jurisdictions, we could change the rule regarding apportionment of punitive damages in wrongful death cases and adopt the majority rule, but we decline to do so.
The initial codification of § 6-5-410 can be traced to Code 1852, §§ 1940, 1941. These sections provided as follows:
[§ 1940] "When the death of a person is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action against the latter at any time within one year thereafter, if the former could have maintained an action against the latter, for the same act or omission, had he lived.
[§ 1941] "The damages recovered in such action cannot exceed three years' income of the deceased, and in no case exceed three thousand dollars. The amount recovered is for the benefit of the widow; if there be none, then for the benefit of the child or children; if there be none, then to be distributed as other personal property amongst the next kin of the deceased."
As can easily be seen, the first act provided for only compensatory damages, and placed a "cap" on the amount of damages that could be awarded.
In February 1860, the legislature amended this act. Pamphlet Acts 1859-60, p. 42. The pertinent language as far as damages were concerned became "such sum as the jury deem just." There are no legislative reports that indicate the purpose of the change, and, consequently, we do not know what debate, if any, was involved in this change. There is no express mention made whether the damages were compensatory or punitive and, arguably, the statute could be construed to mean that the legislature merely removed the limitation on damages contained in the original act.
The language with regard to damages remained the same for several years; however, *1261 there was an error in the Code of 1867. The code commissioners apparently overlooked the act of 1860, but by 1876, the error had been corrected. See, Savannah & Memphis R.R. v. Shearer, 58 Ala. 672 (1877). In 1876, the law provided:
"When the death of a person is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action against the latter at any time within two years thereafter, if the former could have maintained an action against the latter for the same act or omission, had it failed to produce death, and may recover such sum as a jury deem just, and the amount so recovered shall be distributed as personal property of an intestate is now distributed; and shall not be subject to the payment of the debts of the deceased; and such right of action shall survive against the personal representative of the person unlawfully causing the death aforesaid."
Code 1876, § 2641. (Emphasis added.)
In 1887, the language of the wrongful death statute was changed again slightly. See, Louisville & N.R.R. v. Lansford, 102 F. 62 (5th Cir.1900). Code 1887, § 2589 provided that the plaintiff may "recover such damages as the jury may assess." (Emphasis added.) This language relating to the nature and amount of the damages recoverable has remained to the present. See, Code 1896, § 27; Code 1923, § 5696; Code 1940, Title 7, § 123; and Code 1975, § 6-5-410.
The two earliest cases in Alabama construing the pertinent language of the wrongful death statute address the "damages" question, and hold that, while the damages are, in effect, compensatory, nevertheless, because the purpose of the statute was to prevent homicides, the damages were "punitive."
In Savannah & Memphis R.R. v. Shearer, 58 Ala. 672, 680 (1877), this Court discussed damages as follows:
"Lacerated feelings of surviving relations, and mere capacity of deceased to make money if permitted to live, do not constitute the measure of recovery under the act of Feb. 5, 1872. Prevention of homicide is the purpose of the statute, and this it proposes to accomplish by such pecuniary mulct as the jury `deem just.' The damages are punitive, and they are none the less so, in consequence of the direction the statute gives to the damages when recovered. They are assessed against the railroad `to prevent homicides.'"
During the same term of court, however, this Court, in South & North Alabama R.R. v. Sullivan, 59 Ala. 272 (1877), indicated that damages were not entirely punitive:
"Commenting on the act `to prevent homicides,' of February 5, 1872, Pamph. Acts 83, we, in Savannah and Memphis Railroad Company v. Shearer, said, in effect, that the purpose and result of the suit therein provided were not a mere solatium to the wounded feelings of surviving relations, nor compensation for the [lost] earnings of the slain. We think the statute has a wider aim and scope. It is punitive in its purposes. Punitive of the person or corporation by which the wrong is done, to stimulate diligence and to check violence, in order thereby to give greater security to human life; `to prevent homicides.' And it is none the less punitive because of the direction the statute gives to the damages recovered. The damages, `tis true, go to the estate of the party slain, and, in effect, are compensatory; but this does not change the great purpose of the statute'to prevent homicides.'" (Emphasis added.)
59 Ala. at 278-79.
Over the years, through judicial interpretation, those damages deemed "just" or "to be assessed" evolved to encompass only "punitive damages." In fact, recent cases have failed to recognize any early conflict on the nature of the damages, and have emphasized the punitive nature of the statute. In Young v. Bryan, 445 So.2d 234, at 238 (Ala.1984), this Court stated that "it is axiomatic that the only damages recoverable under Alabama's Wrongful Death Statute, § 6-5-410, Code 1975, are *1262 punitive in nature. [Citations omitted]." See also, Geohagan v. General Motors Corp., 291 Ala. 167, 279 So.2d 436 (1973); Blount Brothers Const. Co. v. Rose, 274 Ala. 429, 149 So.2d 821 (1962); and Alabama Great Southern R.R. v. Burgess, 116 Ala. 509, 22 So. 913 (1897).
The fact that punitive damages evolved judicially was recognized in Richmond & Danville R.R. v. Freeman, 97 Ala. 289, 11 So. 800 (1892):
"The act of 1872 having been, without modification in any material sense, twice reenacted since the judicial construction [that damages recoverable under the wrongful death statute are punitive in nature] we have been considering was put upon itin the Code 1876 and again in the Code 1886and being with that construction a constitutional exercise of the legislative power, it is now to be considered as if the terms and provisions, which have been evolved out of it and declared in concrete form by judicial interpretation, were expressly embodied in its letter. This, we think, should close the door to the overruling of the cases which put that construction on it and to the adoption of a different one." (Emphasis added.)
97 Ala. at 296-97, 11 So. at 802. This conclusion was also recognized by those who annotated our early codes.
"The Supreme Court has construed this statute to be punitive in its nature...."
See, Code 1923, § 5696, note, p. 20. There is little question that the interpretation of the wrongful death statute as involving only punitive damages is a judicial one, since none of the statutory provisions ever classified the damages as "punitive."
The first Alabama case that deals with the apportionment issue is Bell v. Riley Bus Lines, 257 Ala. 120, 57 So.2d 612 (1952). In Bell this Court held as follows:
"There is nothing in this statute that authorizes the jury to apportion the damages against tort-feasors sued in this action."
257 Ala. at 123, 57 So.2d at 615.
Because there was no statutorily expressed prohibition of apportionment, the Bell Court could have determined that apportionment of punitive damages in a wrongful death case was fair, constitutional, and in keeping with the punitive purpose of § 6-5-410, and could have gone with the majority rule in this country. It did not.
A review of the cases cited by the Bell Court as authority for its decision indicates that the Court relied mainly on the rationale supporting joint and several liability in compensatory damages case, but the decision reads as follows:
"The well settled trial practice in our courts has been to require a single verdict, fixing a lump sum regardless of the culpability of tort feasors. City of Birmingham v. Hawkins, 196 Ala. 127, 72 So. 25; Layman v. Hendrix, 1 Ala. 212; City of Tuscaloosa v. Fair, 232 Ala. 129, 167 So. 276; 64 C.J. p. 1084; Bull v. Albright, 254 Ala. 29, 47 So.2d 266." (Emphasis added.)
257 Ala. at 124, 57 So.2d at 615.
We recognize that in other jurisdictions apportionment is a preferred practice where punitive damages are involved. See, Note, The Apportionment of Punitive Damages Among Joint Tortfeasors, 25 Ariz.L.Rev. 579 (1983), and Note, Apportionment of Punitive Damages, 38 Va.L. Rev. 71 (1983). We also recognize that Alabama is the only state in which a wrongful death statute has been judicially interpreted to authorize the recovery of only punitive damages. See, Comment, Alabama's Wrongful Death Statute, 4 Ala.L.Rev. 75 (1951).
The purpose of Alabama's wrongful death statute, of course, has been twofold: (1) punishment based on the quality of the wrong, and (2) punishment based upon the wrong or degree of culpability. See, Deaton v. Burroughs, 456 So.2d 771 (Ala.1984); Estes Health Care Centers v. Bannerman, 411 So.2d 109 (Ala.1982); and Airheart v. Green, 267 Ala. 689, 104 So.2d 687 (1958). Most other states also hold that the purposes of wrongful death actions are to punish and deter. See, 38 Va.L.Rev. at 72, supra. Unlike Alabama, however, most jurisdictions, of course, *1263 have departed from the compensation-based emphasis of joint and several liability and gone to the more punishment-oriented approach of apportionment. 25 Ariz.L.Rev. at 579. These states have recognized that, although joint and several liability preserves the plaintiff's right to collect the full amount of punitive damages, it does so at the expense of the defendant's right to fair punishment. 25 Ariz.L.Rev. at 584. Most courts hold that to allow joint and several liability, where punitive damages are imposed, makes it impossible for the punishment to fit the offense and the offender when culpability differs. 25 Ariz.L. Rev. at 586. Of course, apportionment does result in a judgment's being rendered against each defendant individually, 38 Va. L.Rev. at 71, and splits up damages in proportion to the separate culpability of each defendant, and, as a result, penalties conform more closely to the culpability of the offender, 25 Ariz.L.Rev. at 586, but Alabama has not followed that rule.
The judicial interpretation placed upon our wrongful death statute has been the same for many, many years, and, as this Court stated in Richmond & Danville R.R., supra, the legislature of this state has met many times since that construction was placed upon the statute, and several different Codes have been adopted, yet the interpretation which this Court placed on the statute has remained the same.
The history of the wrongful death statute indicates that the legislature is aware of the interpretation placed on the statute by this Court, and it has not amended it. Even though this Court has the power to abrogate the longstanding judicial interpretation of the wrongful death statute,[1] it should, as a matter of public policy, leave any change of that interpretation to the legislature.[2] In Golden v. McCurry, 392 So.2d 815 (Ala.1981), this Court was asked to abolish the common law rule of contributory negligence and replace it with the rule of comparative negligence. There, this Court quoted from an Illinois case, and stated as follows:
"The Supreme Court of Illinois, when it declined to abrogate judicially that state's contributory negligence defense, said:
"`After full consideration we think, however, that such a far-reaching change, if desirable, should be made by the legislature rather than by the court. The General Assembly is the department of government to which the constitution has entrusted the power of changing the laws.
"`Where it is clear that the court has made a mistake it will not decline to correct it, even though the rule may have been re-asserted and acquiesced in for a long number of years. No person has a vested right in any rule of law entitling him to insist that it shall remain unchanged for his benefit. But when a rule of law has once been *1264 settled, contravening no statute or constitutional principle, such rule ought to be followed unless it can be shown that serious detriment is thereby likely to arise prejudicial to public interests....'
"Maki v. Frelk, 40 Ill.2d 193, 239 N.E.2d 445 (1968)."
We are of the opinion that the rule stated there is applicable here.
The second issue for our determination is whether the $3.5 million damages award is excessive. We are aware that in General Motors Corp. v. Edwards, 482 So.2d 1176 (Ala.1985), a majority of this Court affirmed a judgment in a wrongful death case in which a remittitur had been ordered. In that case, this Court approved a judgment for the sum of $1.4 million each for the wrongful deaths of two children. In Alabama Power Co. v. Cantrell, 507 So.2d 1295 (Ala.1986), on return after remand [Ms. May 22, 1987] (Ala.1987), this Court upheld a jury verdict in a wrongful death case in the sum of $1 million, but we cannot say that the trial court erred in refusing to order a remittitur. In each case we affirmed the judgment of the trial court in a wrongful death case.
Applying the principles of law this Court adopted in Hammond, the trial judge held a hearing, and in a well-prepared order set out the reasons why he felt that the law did not authorize him to order a remittitur.
The trial court specifically found that it "ha[d] not been able to determine any factor which could be considered as bias, passion, prejudice, corruption, or other improper motive or cause by the jury." While we would not be bound by this finding in exercising our review of the excessiveness claim pursuant to Code 1975, § 12-22-71, especially if the facts in the record were to the contrary or if the finding was not supported by the record, we believe, in view of the fact that the case was remanded in the first instance for the trial court to make such a determination, that we should accord weight to these findings.
To find a common thread running through this Court's decisions regarding remittiturs is difficult. See Commentary, J. Ellis, Remittitur Practice in Alabama, 34 Ala.L.Rev. 275 (1983). One thing is certain: before Hammond, decisions of this Court did not require the trial courts to state any reasons why a remittitur was granted or denied. General Motors Corp. v. Edwards, 482 So.2d 1176 (Ala.1985). Since Hammond, this Court has remanded certain cases to trial courts, as was done in this case, to assist this Court in carrying out its responsibilities in reviewing verdicts claimed to be excessive. In Vest v. Gay, 275 Ala. 286, 154 So.2d 297 (1963), this Court set out the rules that govern its review of an excessiveness claim:
"The rules governing our consideration of this question are clear and have been reiterated quite often. We refer to them briefly for emphasis: The verdict of a jury should not be interfered with merely because in the opinion of the court the jury gave too little or too much (Airheart v. Green, 267 Ala. 689, 104 So.2d 687; Alabama Great Southern Ry. Co. v. Baum, 249 Ala. 442, 31 So.2d 366); and the authority vested in the courts to disturb a verdict of the jury on the ground of excessive damages is one which should be exercised with great caution (Airheart v. Green, id.; McLaney v. Turner, 267 Ala. 588, 104 So.2d 315; Louisville & Nashville R. Co. v. Tucker, 262 Ala. 570, 80 So.2d 288, 298); where there is no set standard for the admeasurement of the damages but the damages to be awarded are left to the sound discretion of the jury, a remittitur or a new trial should not be ordered on the ground of excessiveness of the jury's verdict except in those cases where the court can clearly see that the verdict has been reached on account of bias, passion, prejudice, corruption, or other improper motive or cause (Airheart v. Green, supra; Yarbrough v. Mallory, 225 Ala. 579, 144 So. 447); but where the damages allowed are so excessive as to warrant the belief that the jury must have been misled by some mistaken view of the merits of the case the court may *1265 interfere and set the verdict aside (National Surety Co. v. Mabry, 139 Ala. 217, 35 So. 698), also, where the trial court refuses to grant a new trial because he does not believe the verdict to be excessive, the favorable presumption attending the jury's verdict is thereby strengthened (International Union, etc. v. Palmer, 267 Ala. 683, 104 So.2d 691; Birmingham Electric Co. v. Howard, 250 Ala. 421, 34 So.2d 830)."
Based on the foregoing, we are of the opinion that the judgment of the trial court, including the damages award, which the trial court initially reviewed on motion for a new trial, and which it has reviewed again pursuant to this Court's mandate, is due to be, and it hereby is, affirmed.
AFFIRMED.
SHORES, ADAMS and STEAGALL, JJ., concur.
MADDOX, J., concurs specially.
ALMON, J., concurs in the result only.
JONES, J. concurs in the result.
TORBERT, C.J., and Beatty and Houston, JJ., not sitting.
MADDOX, Justice (concurring specially).
When this cause was remanded to the trial court, I expressed, in a special concurrence, the reasons why I could no longer rely upon the views I had expressed in a dissent I filed in this case on initial appeal. See, 455 So.2d 802 (Ala.1984).
Consequently, because a majority of this Court, on the first appeal, affirmed the trial court's judgment granting the plaintiff a new trial, and because of the fact that the trial judge, after reviewing the judgment after remand from this Court, has refused to order a remittitur, I am of the opinion that this particular judgment is due to be affirmed.
I would point out that this is a wrongful death case, and I believe a claim that a verdict is excessive in a death case must be viewed differently than in other cases where punitive damages are awarded.[1]
JONES, Justice (concurring in the result).
I concur in the result to affirm the trial court's order on remand. I can not concur with the opinion for several reasons.
First, what is stated in the opinion as the "one basic issue" (whether this Court should change the "non-apportionment of damages among joint tort-feasors" rule) is not an issue in this case. The record of trial is totally devoid of any adverse ruling of the trial court with respect to the non-apportionment-of-damages rule. Indeed, in its order on remand, the trial court states that this is "an issue which the parties have not addressed." Citing this given state of the law, the trial court reasoned that the fact, if it be a fact, that Black Belt's culpability is less than that of S & T in causing the subject death can not reduce Black Belt's liability to a sum less than the total amount of the award.
Second, I am at a loss to explain the opinion's lengthy discussion of two well-known and well-understood legal propositionsthe "punitive damages only" rule in death cases and the "non-apportionment of damages among joint tort-feasors" rule where neither of the parties to this appeal challenges either of these rules as being the present state of the law. Indeed, a substantial portion of the appellant's excellent brief on return to remand is directed to the Court's interpretation of the wrongful death statute, establishing the absolutism of the "punitive damages only" rule in wrongful death cases as a premise for its contention for apportionment of damages among joint tort-feasors.
Not only does the appellant not challenge the "punitive damages only" rule in death cases, but it implores us not to succumb to certain language from earlier *1266 cases that alludes to compensatory damages for wrongful death. See South & North Alabama R.R. Co. v. Sullivan, 59 Ala. 272 (1877). The appellant recognizes, and rightly so, that only by this Court's holding fast to the "punitive damages only" rule can the appellant make its strongest argument for apportionment of damages in the context of joint tort-feasors in a wrongful death case.
Third, I also disagree with the opinion's reason for rejecting the apportionment-of-punitive-damages rule in wrongful death cases: that the legislature has implicitly adopted the Court's interpretation of the wrongful death statute. This reasoning takes the old metaphormixing apples and orangesto a new extreme. The common law doctrine of non-contribution among joint tort-feasors, from which the non-apportionment rule evolved, pre-dates the wrongful death statute; and the combination of these doctrines has been applied to the wrongful death statute by this Court. The extreme liberty taken by this Court's interpreting the legislative language "such damages as the jury may assess" to mean "punitive damages only" should not be further stretched so as to blame the retention of the non-apportionment rule on legislative inaction.
These reasons for my disagreement with the opinion notwithstanding, I agree that the trial court's supplemental order after remand is due to be affirmed. Indeed, the trial court's order is a classic response to this Court's Hammond remand order and deserves special emphasis in at least two aspects:
First, the trial court is eminently correct in pointing out this Court's "slip of the pen" in directing the trial court to reconsider the propriety of the jury verdict "in light of the fact that the first jury found in favor of Black Belt and returned a verdict of only $250,000 against S & T." To be sure, in a gesture of kindness, the trial court omitted any reference to the obvious: that the new trial granted to the plaintiff after the first trial was based on error totally unrelated to the issue of damages in the second trial.
Second, the trial court's analysis of the "non-apportionment of damages" rule and its utilization by way of analogy is entirely appropriate in the court's evaluation of the damages issue. Between the lines one can also read the trial court's subtle rebuke of this Court's order to re-examine the denial of Black Belt's new trial motion when, as a practical matter, the only legal avenue of relief has long been foreclosed by the juxtaposition of two conflicting common law rules: 1) the rule that the amount of damages is to be measured by the degree of the defendant's culpability; and 2) the "non-apportionment of damages" rule, which authorizes the jury to fix punitive damages against each of the defendants according to the combined culpability of the several joint tort-feasor defendants.
Apparently, I misunderstood what this Court had in mind when we invited the parties to file supplemental briefs and address the "non-apportionment of damages" rule. I interpreted this as a signal that we were prepared to rethink the obvious incongruity of the "punishment according to the enormity of the wrong" rule and the "non-apportionment of damages" rule, with the view of either affording the appellant an opportunity to raise this issue below or, at least, affording this Court an opportunity to address the issue abstractly and announce a more sensible rule for prospective application.
The avowed purpose of the Hammond remand procedure was to afford a more refined process for the review of the excessiveness-of-the-award issue. The "non-apportionment of damages among joint tort-feasors" rule, particularly as it applies to punitive damages, stands in sharp contrast to the spirit of Hammond.
Because, on remand, we invited the parties to address the non-apportionment rule (albeit mistakenly), I now express my views on this issue. Initially, I emphasize that what I propose is a radical change in the law, and that I would have used this case as a vehicle to formulate a new rule for prospective application where punitive damages are awarded against joint tort-feasors.
*1267 The following hypothetical set of facts dramatizes the need for change (tort reform, if you please): Suppose the jury, during it deliberations, had returned to the jury box and asked the trial judge this question: "Your Honor, we have now found that the negligent conduct of each of these defendants combined and concurred to cause the plaintiff's intestate's death. We have also found that S & T was guilty of 80 per cent of the total fault and Black Belt was guilty of 20 per cent. If we understand your instructions correctly, we are supposed to return a single verdict reflecting the total amount of the award against both defendants. Our question is, how can we follow this instruction and at the same time carry out your other instructions to measure the amount of damages by the degree of wrong resulting in Mr. Sessions's death? In other words, we have already arrived at the total amount we find to be appropriate for the combined fault of these two defendants. If we give effect to your "enormity of the wrong" instruction, we would return two verdicts, and the total award would be broken down so that 80 per cent would go against S & T and 20 per cent against Black Belt. Can we do this?" There is no dispute that under the present state of the law the trial court must reply, "No, you can not. You will abide by my original instruction to return a single verdict against both defendants for one lump sum as damages to be assessed against the defendants."
The threshold test of validity of any law ought to be two-fold: 1) It ought to make sense; and 2) it ought to be honest. Until the hypothetical question "Can we do this?" can be answered in the affirmative, we perpetuate a fiction that meets neither prong of the test.
I propose the following rule: If the jury finds that two or more defendants are jointly liable for punitive damages, and that the defendants are guilty of culpable conduct in unequal degrees, then it should apportion the damages among the separate and several defendants in accordance with each defendant's degree of culpability.

ON APPLICATION FOR REHEARING
PER CURIAM.
APPLICATION OVERRULED.
MADDOX, JONES, ALMON, SHORES, ADAMS and STEAGALL, JJ., concur.
TORBERT, C.J., and BEATTY and HOUSTON, JJ., not sitting.
JONES, Justice (concurring specially).
Upon consideration of the application for rehearing, I have modified my "concurring in the result" opinion issued on June 30, 1987.
NOTES
[1] This Court recognizes the necessity and right it possesses to make the law just and to make it conform to public policy. See, Lloyd v. Service Corp. of Alabama, 453 So.2d 735 (Ala.1984); Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975). In Lloyd, this Court changed longstanding law with regard to exculpatory clauses. The Court noted:

"[I]t is clearly within the power of the judiciary, and, at times, appropriate for the judiciary, to change an established rule of law."
453 So.2d at 740. The Court noted further:
"[W]here a judicial creation has become outmoded or unjust in application, it is more often appropriate for the judicial body to act to modify the law. Further, it is not uncommon for the Legislature to defer to the court's wisdom regarding such a rule of law. See, Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68, 73 (1975); Haney v. City of Lexington, 386 S.W.2d 738, 741 (Ky.1964); Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618, 626 (1962). McAndrew v. Mularchuk, 33 N.J. 172, 193, 162 A.2d 820, 832 (1960)."
453 So.2d at 740. Continuing, the Court stated:
"[W]hen it has determined that a judicially created law is unjust in its application, this court cannot long permit itself to be used as an instrument of inequity by refusing to act to change the law."
453 So.2d at 740.
In Jackson, supra, this Court changed the longstanding law providing municipal corporations immunity from liability for the wrongful acts of their agents acting within the line and scope of their employment.
[2] We judicially know that the legislature is currently in session and that it may address some of the questions raised in this appeal.
[1] The legislature just recently made a distinction between wrongful death actions and other civil actions in which punitive damages are recoverable. See Act 87-185, Ala.Acts 1987. In that Act, wrongful death actions are not affected by its provisions.